Henry F. MOGG, Appellant,

v.

**NATIONAL BANK OF ALASKA, a
National Banking Association,
Appellee.**

No. S–4596.

Supreme Court of Alaska.

Feb. 12, 1993.

Kenneth D. Lougee and Joseph S. Slusser, Hughes, Thorsness, Gantz, Powell & Brundin, Fairbanks, for appellant.

Barbara L. Schuhmann, Staley DeLisio Cook & Sherry, Inc., Fairbanks, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

RABINOWITZ, Chief Justice.

This appeal arises from the remand ordered in *Lundgren v. National Bank of Alaska,* 756 P.2d 270 (Alaska 1987). Originally, the case concerned the rights of James Lundgren and Henry Mogg, holders of deeds of trust in two properties foreclosed upon by the National Bank of Alaska ("NBA").[1] In *Lundgren,* we held that NBA improperly invoked a "dragnet clause" in conjunction with foreclosure of its security interest in the subject properties. *Id.* at 279–80. We remanded for a new foreclosure or a hearing "in the event that intervening third party rights preclude this remedy...." *Id.* at 282.

On remand, the superior court ordered a second sale of the One Mile Peger Road Property. Mogg sought and was denied alternative remedies in the superior court. His right to such alternative remedies is the subject of this appeal.

FACTS

Lundgren Pacific Construction Company ("LPCC") and John R. McCall, LPCC's owner, leased the One Mile Peger Road property from James Lundgren with an option to purchase. *Lundgren,* 756 P.2d at 273. John R. McCall also owned another corporation, J. McCall, Inc. (JMI). JMI and LPCC had guaranteed each other's debt to NBA, which by the time of the judicial foreclosure suit that led to this controversy amounted to more than $2 million. 756 P.2d at 271.

In 1973, NBA advanced a loan of $530,-000.00 to Lundgren for the purchase of the One Mile Peger Road Property, which was secured by the first deed of trust in the Property. *Id.* at 273. That deed of trust contained a "dragnet clause" which provided that the deed of trust secured the principal balance as well as:

> [A]ny and all other indebtedness of the Trustor (or any successor in interest of the Trustor to the property covered by this Deed of Trust) to the Beneficiary, whether contingent, now due, or hereafter to become due, and whether heretofore or contemporaneously herewith or hereafter contracted, or whether arising by operation of law out of the same or different transactions between the parties hereto or between others.

On June 30, 1983, NBA declared that JMI and LPCC were in default, but allowed McCall additional time before foreclosure to repay the loans or to sell LPCC. *Id.* at 273 n. 2. McCall sought to exercise his option to purchase the One Mile Peger Road Property because the fair market value of the property had appreciated above the $684,730.50 option price. NBA and McCall agreed that NBA would benefit from McCall's exercise of the option. McCall's purchase of the One Mile Peger Road Property would increase the value of LPCC's assets and thereby improve NBA's equity position.

In order to purchase the property, McCall borrowed $245,000.00 from Mogg. Mogg was given a second deed of trust on the property as security in exchange for this loan. *Id.* at 273. In *Lundgren,* we summarized the proceeding leading up to McCall's exercise of the option to purchase the One Mile Peger Road Property as follows:

> second deed of trust on the property. The NBA deed of trust contained a dragnet clause similar to the dragnet clause in NBA's first deed of trust on the One Mile Peger Road Property. *Lundgren v. National Bank of Alaska,* 756 P.2d 270 (Alaska 1987).

---

1. The two properties that NBA foreclosed upon have been denominated the "Seven Mile North Yard" and the "One Mile Peger Road Property." Both properties are located in Fairbanks. The Seven Mile North Yard was purchased by JMI in 1978. Alaska National Bank (ANB) held a first deed of trust on the property. NBA held a

Negotiations took place between McCall and NBA, both represented by counsel, on February 28, 1983. NBA had previously indicated to McCall that it might help finance payment of the option price by allowing LPCC to assume Lundgren's $530,000 note and the corresponding first deed of trust on One Mile Peger Road. Apparently Lundgren still owed NBA approximately $440,000 on this note. McCall arrived at the negotiations with a check for $245,000 made payable to himself and already signed by Mogg. Mogg was not present or represented by counsel at the negotiations.

A Memorandum of Agreement between NBA and McCall resulted from the negotiations. The agreement provided that NBA would release Lundgren and allow LPCC to assume the approximately $440,000 remaining balance of the original $530,000 debt and the first deed of trust on One Mile Peger Road. (This was accomplished by an Agreement for Assumption executed by McCall and NBA.) The agreement also provided that LPCC would give NBA, as additional collateral, a third deed of trust for $100,000 on One Mile Peger Road, a second deed of trust on another piece of property, and an assignment of proceeds of any sale of LPCC or any of its assets or stock. The agreement further stated that LPCC reaffirmed all undertakings, representations and agreements it had entered into with NBA.

The parties also agreed (although this is not stated in the agreement) that Mogg would take a second deed of trust on One Mile Peger Road to secure his $245,000 investment. This deed of trust was recorded on March 6, 1983.

*Id.* at 273.

NBA was aware of the agreement between Mogg and McCall concerning the second deed of trust. Mogg asserts that at the time of the agreement, it was NBA's intent that Mogg would be fully secured by his second deed of trust. 756 P.2d at 280. NBA's attorney, however, admits that she knew of the existence of as well as the effect of the dragnet clause but chose to remain silent during these negotiations. In her affidavit Barbara Schuhmann states:

> I certainly felt under no obligation to explain the legal effect of the documents to Mr. McCall, who was represented by counsel. The deed of trust was recorded in 1976 and I did not think it necessary to explain to opposing counsel the terms it contained: I expected him to know them better than I did.

NBA commenced judicial foreclosure proceedings in November 1983 while McCall was still in default. NBA sought judgment against McCall, LPCC and JMI, jointly and severally, in the amount of $2,541,322.99, plus interest, attorney's fees, and costs, noting that its interests in both Seven Mile North Yard and the One Mile Peger Road Property were superior to those of Lundgren and Mogg, respectively.[2] The superior court upheld the dragnet clause which rendered ineffectual Mogg and Lundgren's deeds of trust. Mogg and Lundgren then appealed.

While the *Lundgren* appeal was pending, foreclosure proceedings continued in the superior court. The superior court supervised sale was completed in 1985. *Id.* at 275. NBA was the only bidder on the One Mile Peger Road Property, with an offset bid of $716,494.59. 756 P.2d at 275. On appeal, we held that the dragnet clause in NBA's first deed of trust was unenforceable and remanded for "further proceedings not inconsistent with this opinion."[3] 756 P.2d at 280.

On remand, NBA sought to have the superior court order a second foreclosure sale and to make findings concerning the priorities of lienholders in accordance with our *Lundgren* opinion. Mogg objected to the sale and moved to amend his earlier answer to assert a counterclaim against NBA. Thereafter, the superior court en-

---

**2.** At the time of the foreclosure, Lundgren held a third deed of trust on the Seven Mile North Yard.

**3.** We also held that the dragnet clause in the NBA deed of trust on the Seven Mile North Yard was unenforceable. Only Mogg's appeal is now before the court.

tered an order partially setting aside the first sale and ordering a second sale. At the second sale NBA, was once again the only bidder on the property, making an offset bid of $687,000. On April 2, 1989, the superior court granted Mogg's motion to allow a counterclaim against NBA.[4] The second foreclosure sale was confirmed by the superior court.

Mogg also moved to have Schuhmann and her law firm disqualified from representing NBA. The superior court denied the motion to disqualify, but indicated that Mogg could renew his motion if a showing were made that Schuhmann would be called as a witness or that her testimony would prejudice NBA.[5] NBA responded to Mogg's amended answer and counterclaim with a motion for summary judgment.[6]

The superior court subsequently granted summary judgment in favor of NBA as to Mogg and Lundgren's counterclaims for damages. The superior court also concluded that the counterclaims were timely and were not barred by the applicable statute of limitations. The superior court noted that the counterclaims "for damages for wrongful and intentional misrepresentation of the 1983 agreement with McCall and/or the decline in value of the property because of any other actions NBA caused or contributed to ... are not ruled on by this order."

Thereafter, Mogg sought to abrogate NBA's attorney-client privilege, alleging that NBA had defrauded him. NBA responded with a motion for summary judgment requesting dismissal of the fraud claims raised in the motion to abrogate and seeking a ruling that all counts of Mogg's counterclaim were disposed of by the superior court's prior orders. Mogg also moved for summary judgment. The superior court denied Mogg's motion to abrogate and dismissed Mogg's amended counterclaim.

Mogg now appeals the superior court's denial of his motion to abrogate NBA's attorney-client privilege as well as the dismissal of his counterclaim.

## I. DOES MOGG HAVE A RIGHT TO ASSERT COMPENSATORY AND PUNITIVE DAMAGE CLAIMS?

On remand, the superior court dismissed Mogg and Lundgren's claim for damages due to the decline in market value of the properties between the time of the initial sale and the resale. The court noted that "[d]efendants cannot assert a claim for damages because the alternate remedy was ordered by the Alaska Supreme Court in *Lundgren v. NBA*, 756 P.2d 270, 282 (Alaska 1987), stating that the foreclosure sale was to be vacated and the sale renoticed." We reverse the superior court's grant of summary judgment to NBA with respect to Mogg's compensatory and punitive damage counterclaim.

Whether Mogg may assert compensatory and punitive damage counterclaims is determined by the doctrines of res judicata and law-of-the-case. Res judicata provides that a final judgment on the merits is conclusive as to the rights of the parties involved, and as to these parties, constitutes an absolute bar to a subsequent action involving the same claim.[7] Similar-

---

**4.** In his amended counterclaim, Mogg sought monetary damages from NBA based upon several theories: 1) breach of the agreement giving Mogg a second deed of trust because NBA invoked the dragnet clause claiming "broader coverage ... than was intended or authorized by law"; 2) wrongful and/or intentional misconduct when NBA conducted the first sale of the property; 3) that NBA should be estopped from changing its position from that taken at the time of the agreement of February 28, 1983; and, 4) breach of NBA's duty of good faith and fair dealing.

**5.** The superior court also noted that Mogg could renew his motion for disqualification by show-

ing that the probable evidence that Schuhmann's testimony would provide was unobtainable elsewhere.

**6.** Lundgren also had asserted a counterclaim against NBA. NBA then moved for summary judgment against both Mogg and Lundgren.

**7.** *See Ferguson v. Dep't of Corrections*, 816 P.2d 134, 138 (Alaska 1991) (for res judicata to apply, there must have been a full and fair opportunity to litigate the issue); *Nelson v. Jones*, 787 P.2d 1031, 1033 (Alaska 1990) (noting that res judicata precludes relitigation by the same parties of relevant claims that could have been raised);

ly, the doctrine of law of the case generally requires adherence by a lower court to an appellate court's decision and generally prohibits reconsideration of issues which have been adjudicated in an appeal of the case.[8]

■ Mogg argues that the superior court erred in ruling that his contract, tort, and punitive damages claims were precluded by *Lundgren* because this court did not render a final judgment in that case. He notes that in *Lundgren*, this court "simply corrected the error made by Judge Blair with regard to his ruling on the dragnet clause," and remanded for further proceedings consistent with that opinion. NBA counters that our decision in *Lundgren* provided Mogg with "full and complete relief and was an adjudication on the merits of his claim for estoppel or equitable relief." Therefore, NBA asserts, Mogg was not entitled to an additional remedy of contract, tort, or punitive damages because these claims were extinguished by Mogg's receipt of equitable relief.

The Restatement (Second) of Judgments indicates that the fact that a trial court order is reviewed on appeal "does not necessarily mean that the matter resolved in the order should be treated as final for the purposes of res judicata." Restatement (Second) of Judgments § 13 cmt. b, (1982). Furthermore, a claim will be final for purposes of res judicata only:

> [I]f it is not tentative, provisional, or contingent and represents the completion of all steps in the adjudication of the claim by the court, short of any steps by way of execution or enforcement that

may be consequent upon the particular kind of adjudication. Finality will be lacking if an issue of law or fact essential to the adjudication of the claim has been reserved for future determination, or if the court has decided that the plaintiff should have relief against the defendant of the claim but the amount of the damages, or the form or scope of other relief, remains to be determined.

*Id.* Under this definition of finality, the judgment in *Lundgren* is not final for purposes of res judicata because there we merely addressed the validity of the dragnet clause. 756 P.2d at 282.

Mogg correctly argues that because all matters were not litig. to finality in *Lundgren*, he was entitled to amend his pleadings on remand to assert additional claims against NBA. He relies on *Wells Fargo v. Sunshine Security & Detective Agency*, 575 So.2d 179 (Fla.1991), to support the proposition that "[t]he law-of-the-case doctrine was meant to apply to matters litigated to finality, not matters that remain essentially unresolved due to the erroneous ruling of a lower court." *Id.* The *Wells Fargo* court also noted that the effect of returning such litigation to the trial court is that the matter is treated as if "the erroneous ruling never was made." *Id.*

Mogg also appropriately analogizes the instant case to *Harbel Oil Co. v. Superior Court of Maricopa County*, 86 Ariz. 303, 345 P.2d 427 (1959). In *Harbel*, the supreme court of Arizona initially ruled that the trial court erred in finding that a mort-

*DeNardo v. State,* 740 P.2d 453 (Alaska 1987), *cert. denied,* 484 U.S. 919, 108 S.Ct. 277, 98 L.Ed.2d 239 (1987); *DeNardo v. Municipality of Anchorage,* 775 P.2d 515, 517 (Alaska 1989) (res judicata applies "when (1) a court of competent jurisdiction, (2) has rendered final judgment on the merits, and (3) the same cause of action and same parties or their privies were involved in both suits"); *cf. Luedtke v. Nabors Alaska Drilling, Inc.,* 768 P.2d 1123, 1130 n. 5 (Alaska 1989) (res judicata does not preclude employer's claim that employee was fired for due cause after decision by Commissioner of Labor that employee was not fired for misconduct, because discharge for misconduct and wrongful discharge are separate issues).

**8.** *See Luedtke v. Nabors Alaska Drilling, Inc.,* 834 P.2d 1220, 1228 (Alaska 1992) (doctrine of law of the case is a doctrine of judicial policy, not law, and "merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power"); *Alaska Diversified Contractors, Inc. v. Lower Kuskokwim School Dist.,* 778 P.2d 581, 583 (Alaska 1989) (doctrine of law of the case prohibits reconsideration of issues decided in a prior appeal in the same case, except where there are exceptional circumstances); *cf. Hayes v. Xerox Corp.,* 718 P.2d 929, 934 (Alaska 1986) (doctrine of law of the case not applicable where judge newly assigned to case reverses earlier ruling of judge formerly assigned to case).

gage given by Harbel Oil had been foreclosed. The court remanded to the superior court for "proceedings not inconsistent" with the supreme court's decision. On remand, Harbel Oil argued that the superior court could not hear additional defenses in the amended counterclaim because the first appeal "disposed of all relevant questions of law which were raised *or which might have been raised.*" (Emphasis in original.) 345 P.2d at 429. The Arizona supreme court rejected this argument, noting that although res judicata and law-of-the-case are applicable where a court of last resort renders a final judgment:

> Such was not the case here. The court had before it only the foreclosure issues upon which the trial court based its judgment. The reversal was simply a decision that the [superior court] was in error on that point, and the cause was remanded for proceedings not inconsistent with the holding that said mortgage

had not been foreclosed. None of the defenses now pressed below is inconsistent with this Court's holding. Therefore, it is clear that the [superior court] is not deprived of jurisdiction to hear such defenses under the principle of res judicata.

*Id.* at 430. The parallels between *Harbel* and the instant case are evident. *See also R.E.B., Inc. v. Ralston Purina Co.,* 525 F.2d 749 (10th Cir.1975);[9] *Metropolitan Hous. Dev. Corp. v. Village of Arlington Heights,* 469 F.Supp. 836 (N.D.Ill.1979).[10]

We agree with the reasoning of the supreme court of Arizona and hold that our decision in *Lundgren* did not preclude Mogg from raising contract, tort, and punitive damages counterclaims on remand. Therefore, the superior court's grant of summary judgment dismissing Mogg's counterclaim on the grounds of res judicata was erroneous.[11] Further support for this

---

**9.** In *R.E.B.* the court said in relevant part:

> Authority for granting amendments stems from Rule 15(a). It contemplates allowing amendments freely when justice requires. Changes or expansion are not to be allowed on remand if to do so would run counter to the mandate of the appellate court. *Moore's Federal Practice* ¶ 15.11; *Britton v. Dowell,* 243 F.2d 434 (10th Cir.1957). In this case the mandate neither expressly nor implicitly dealt with the propriety of pleading changes.
>
> The principal factors which are considered in connection with the offer of an amendment are, first, whether it will cause delay and, second, whether the adversary will suffer prejudice. Lateness does not of itself justify the denial of the amendment. *Moore, supra,* ¶ 15.08(4); 4 A.L.R.Fed. 128. And the fact that it is offered following remand does not suffice of itself to require denial. *Retail Clerks Int'l Ass'n. v. Lion Dry Goods, Inc.,* 341 F.2d 715, 722 (6th Cir.1965). Unless the granting of the amendment after remand caused grave prejudice, the action is not an abuse of discretion. *See Patton v. Guyer,* 443 F.2d 79, 86 (10th Cir.1971).

525 F.2d at 751.

**10.** In *Metropolitan Hous. Dev. Corp.* the court observed:

> The intervenors misstate the law. While it is true that an inferior court cannot question or vary the mandate of a superior court on issues actually presented to the higher court, it is free to allow additional pleadings and conduct additional proceedings in response to changed circumstances. While a mandate is

controlling as to matters within its compass, on the remand a lower court is free as to other issues.

469 F.Supp. at 849 (citations omitted).

**11.** NBA further argues that Mogg should be deemed to have waived any right to receive damages since he pursued one remedy to the exhaustion of all others and failed to ask for damages in the superior court until after our remand. However, Mogg did not elect foreclosure as a remedy. Instead he defended against NBA's foreclosure action and filed a counterclaim in part because of a declining Fairbanks real estate market which occurred between September 7, 1984 (the date the superior court granted NBA summary judgment on the dragnet clause issue) and December 9, 1987 (the date of our opinion in *Lundgren* as amended pursuant to a petition for rehearing). Thus Mogg had no reason to amend his answer and counterclaim to add claims for damages until after this court had rendered its opinion in *Lundgren.*

NBA contends that Mogg waived his additional claims when he allowed the February 26, 1985 deadline for amendments and pleadings to expire. However, by that date, the superior court had decided that the dragnet clause was legal and had been properly invoked and Mogg's appeal was pending before this court. Therefore, it is clear that Mogg did not waive these additional claims.

NBA also asserts that Mogg waived his right to present additional claims and evidence in support thereof by obtaining a Rule 54(b) certification. However, NBA has previously assert-

conclusion is found in *King v. Alaska State Hous. Auth.*, 571 P.2d 1010 (Alaska 1977), where we held that the superior court had not abused its discretion by granting a motion to amend a complaint where occurrences during the pendency of an appeal made the remedy sought no longer available. We noted that:

> On remand, the superior court could not alter our decision; however, it could take action which was not inconsistent with our decision. The amended and supplemental complaint does not attempt to revive the theories which we determined adversely to appellants. It is based primarily on the same underlying facts on which appellants had made a prima facie case of abuse of discretion and does not conflict with our previous decision.

The question whether the amended and supplemental complaint should have been allowed was within the discretion of the superior court. *Estate of Thompson v. Mercedes–Benz, Inc.*, 514 P.2d 1269, 1271 (Alaska 1973). An amended or supplemental complaint may be permitted during trial, or during trial proceedings, if the requirements of Civil Rule 15 are met. The fact that the case had once been partially tried, appealed and remanded did not deprive the superior court of power to permit the amendment. *Nucor Corp. v. Tennessee Forging Steel Serv., Inc.*, 513 F.2d 151, 153 (8th Cir. 1975); *R.E.B., Inc. v. Ralston Purina Co.*, 525 F.2d 749, 751 (10th Cir.1975). *Accord, Texarkana v. Arkansas Louisiana Gas Co.*, 306 U.S. 188, 203, 59 S.Ct. 448, 455, 83 L.Ed. 598, 607–608 (1939).

ASHA suggests that the superior court abused its discretion in allowing the filing of the amended and supplemental complaint. We do not agree. As we have said, the claim for damages is based on the same fundamental facts as those alleged in the original complaint. The sale and development of the property during the pendency of this appeal required some change in the relief sought because the remedy of injunction was no longer available. Appellants chose not to seek rescission, believing that remedy to be barred by practical considerations. 571 P.2d at 1012. In the instant case, as in *King*, we conclude that the superior court did not err in its allowance of the questioned amendments.

■ NBA also argues that the grant of summary judgment can be affirmed on the alternative ground that no contract exists between Mogg and the bank. Mogg alleges that he was a third party beneficiary of the contract between McCall and NBA. Alternatively, Mogg argues that McCall was acting as Mogg's agent at the negotiations. Mogg indicates that McCall assured him that McCall would obtain a second deed of trust to protect Mogg's interests. This allegation is supported by McCall, who noted in his affidavit that:

> All parties agreed, including the bank who was represented by Ms. Schuhmann and Mr. Granger, that Mr. Mogg would indeed be secured. It was also made clear that the specific manner in which Mr. Mogg would be secured was a second deed of trust.

McCall's attorney further supports this allegation noting that, at the negotiations, "it was absolutely clear that the National Bank of Alaska understood and agreed that the debt secured by Mr. Mogg would be second in priority only to the unpaid balance of the debt owed on the original Lundgren note, which was secured by NBA's first deed of trust." These affidavits and Mogg's deposition testimony are sufficient to demonstrate that a genuine

---

ed a contrary (although correct) view in a memorandum submitted to the superior court after its decision in *Lundgren* noting that

> Mr. Mogg filed a Rule 54(b) request for final judgment as to the decision upholding the effectiveness of NBA's "dragnet" clause on or about February 19, 1985. He specifically recognized that not all claims were decided in that judgment. Rule 54 provides that such orders or decisions do not terminate the ac-

tion "as to *any* of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

In brief we reject NBA's contention that Mogg should be deemed to have waived any additional claims he might have by virtue of his obtaining a Rule 54 certification as to the dragnet issue.

issue of material fact exists as to the existence of a contract. We therefore reject NBA's alternative theory for upholding the superior court's dismissal of Mogg's contract claims.[12]

## II. WAS MOGG'S AMENDED COUNTERCLAIM SOUNDING IN TORT BARRED BY THE STATUTE OF LIMITATIONS?

■ In his counterclaims, Mogg alleged claims in both contract and tort based upon NBA's actions between February 1983 and July 30, 1985. The superior court ruled that the applicable statute of limitations barred Mogg's tort claims. In so ruling the court reasoned that "Mogg was aware of the cause of action by his own testimony in the fall of 1983, and its a two year statute of limitations." Mogg argues that the superior court erred in finding the claims barred by the statute of limitations because the amended counterclaims related back to the original answer under Civil Rule 15(c).[13]

Rule 15(c) states in part:

**Relation Back of Amendments.** Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading.

Citing *Estate of Thompson v. Mercedes–Benz, Inc.*, 514 P.2d 1269 (Alaska 1973), Mogg contends that the counterclaim should relate back to the answer that was filed in 1984. In *Mercedes–Benz* we stated:

We are persuaded that the correct rule is that a counterclaim should relate back under Civil Rule 15(c), if it arose from the same transaction, and that the same test should be applied to an omitted cross-claim.

514 P.2d at 1274.

NBA argues that the counterclaims are not an "amendment" and that if the counterclaims arose out of the same transaction, they were compulsory counterclaims that are governed by Rule 13(f) and therefore should have been asserted before the statute of limitations had run. In *Mercedes–Benz* we considered and disposed of a similar argument observing:

It is somewhat inconsistent to conclude that after the limitations period has run plaintiff may allege an additional claim for relief arising from the conduct, transaction or occurrence involved in his original claim and that it will relate back under Rule 15(c), yet deny defendant an analogous opportunity by deciding that a compulsory counterclaim will not relate back....

**12.** As noted previously, the superior court granted summary judgment in favor of NBA on the misrepresentation claims partly on res judicata grounds. As to the misrepresentation claim, Mogg argues that NBA's failure to disclose the existence of the dragnet clause was an actionable misrepresentation. NBA argues that there was no claim for the tort of misrepresentation because there was neither reliance on Mogg's part nor a misrepresentation or omission in the context of a duty to disclose. NBA argues that Mogg did not rely because he gave the check to McCall four days prior to the alleged misrepresentation. However, as the record indicates, Mogg gave the check to McCall with the understanding that he would be secured by a second deed of trust. Thus, as to the issue of reliance, Mogg has raised a genuine issue of material fact.

On the issue of the existence of an omission or misrepresentation, Mogg points to Schuhmann's affidavit as indicating that Schuhmann was aware of the dragnet clause at the February 28, 1983 meeting and took the position that she

was not under a duty to inform Mogg or McCall of its existence. Mogg further relies on the affidavit of NBA officer William Granger indicating that he became aware of the dragnet clause after the February 28, 1983 meeting. In our view Mogg raises genuine issues of material fact as to whether an agency relationship between McCall and Mogg existed, whether NBA had a duty to disclose in this circumstance, and whether NBA and Schuhmann made an incomplete disclosure to Mogg's agent.

**13.** Mogg alleges that the superior court also erred in focusing on February 28, 1983 as the date on which the tortious conduct occurred for the purposes of calculating the statute of limitations period. Mogg argues that the Bank's tortious behavior continued until the wrongful foreclosure sale on June 3, 1985. However, even if the later date was employed by the superior court in calculating the statute of limitations period, the two years would have run before the motion to file an amended counterclaim was filed on June 28, 1988.

514 P.2d at 1273–74 (quoting 6 C. Wright & A. Miller, *Federal Practice and Procedure: Civil* § 1496, at 487–88 (1971)). While NBA is correct in asserting that there must be notice to the party against whom the amended claims are brought, there is no evidence to demonstrate any lack of notice and resulting prejudice against NBA. Therefore, we conclude that the superior court erred in dismissing Mogg's tort counterclaim as barred by the statute of limitations.[14]

## III. DID THE SUPERIOR COURT ERR IN DENYING MOGG'S MOTION TO ABROGATE THE ATTORNEY CLIENT PRIVILEGE?

■ Mogg argues that the superior court erred by failing to abrogate NBA's attorney client privilege and by granting summary judgment against him before allowing Mogg to proceed with full discovery. Evidence Rule 503 protects a client from being compelled to disclose confidential communications between the client and the attorney. The attorney may also assert the privilege on behalf of the client. Evidence Rule 503(c). However, Evidence Rule 503(d)(1) provides an exception to the privilege for communications made in "furtherance of crime or fraud." That exception is applicable:

> If the services of the lawyer were sought, obtained or used to enable or aid anyone to commit or plan to commit what the client knew or reasonably should have known to be a crime or fraud....

Alaska Rules of Evidence 503(d)(1).

Mogg argues that NBA's attorney, "has effectively admitted under oath that in the context of her attorney-client relationship, she intentionally misled a party with whom she was negotiating." Mogg further asserts that it appears that NBA's attorney "may have been a prime architect of a plan which was nothing less than intentional deception."

Mogg correctly cites *United Services Automobile Ass'n v. Werley*, 526 P.2d 28, 32 (Alaska 1974), for the proposition that there must be a prima facie showing of fraud before the court will defeat the privilege. *Werley* explained that in order to make a prima facie showing, the "evidence in favor of a proposition [must] be sufficient to support a finding in its favor, if all of the evidence to the contrary be disregarded." 526 P.2d at 32, n. 15. In *Central Constr. Co. v. Home Indemnity Co.*, 794 P.2d 595 (Alaska 1990), we held that a court could grant *in camera* review in its discretion upon a showing of "... a factual basis adequate to support a good faith belief by a reasonable person ... that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies." 794 P.2d at 599. Whether or not to grant in camera review is within the discretion of the judge. *Central Constr.*, 794 P.2d at 599.

NBA argues that neither it nor its counsel owed Mogg any fiduciary duty and that "NBA did not agree to give Mogg a second deed of trust; LPCC did. NBA did not take Mogg's money." NBA also asserts that "NBA did not benefit from Mogg's loan to McCall or McCall's payment to Lundgren." Despite NBA's arguments that the negotiations were not directly with Mogg, Mogg asserts that his loan to McCall would not have been consummated absent NBA's representations to McCall regarding the value of the second deed of trust. Mogg's claim of fraud rests on NBA's actions in agreeing with McCall that Mogg would have a second deed of trust in the property in exchange for $245,000 while counsel for NBA knew that the dragnet clause would render Mogg's second deed of trust valueless. Mogg argues that by allowing NBA to agree to McCall's request for a second deed of trust for Mogg and by allowing NBA to take a third deed of trust in the property, counsel for NBA in effect misrepresented the value of the

---

**14.** *See also Magestro v. State*, 785 P.2d 1211, 1213 (Alaska 1990) (relation back under Rule 15(c) should be liberally construed); *Betz v. Chena Hot Springs Group*, 742 P.2d 1346, 1351 (Alaska 1987) (theory behind rule of relation back is that a party who has been given notice of litigation concerning a given matter has been given notice adequate to satisfy the intent of statutes of limitations).

security he was given. Citing *Carter v. Hoblit*, 755 P.2d 1084, 1086 (Alaska 1988), Mogg argues that fraud can be committed absent a fiduciary duty when statements are made that omit material information. In brief, Mogg argues that the superior court erred in rejecting his abrogation contentions and in failing to grant *in camera* review.

After reviewing the record we conclude that Mogg made a prima facie showing of fraud in that NBA agreed to a second deed of trust for Mogg and a third deed of trust for itself knowing that the second deed of trust was worthless.[15] We therefore hold that the superior court should have ruled that Mogg had made a prima facie case for abrogation of the attorney-client privilege.

## IV. DID THE SUPERIOR COURT ERR IN DENYING MOGG'S REQUEST FOR PUNITIVE DAMAGES?

The superior court denied Mogg's motion for punitive damages because the tort claims were dismissed as barred by the statute of limitations. Whether punitive damages are recoverable now must await developments upon remand of the case.[16]

## CONCLUSION

The superior court's grant of summary judgment to NBA dismissing Mogg's counterclaim for compensatory and punitive damages is REVERSED. The superior court's grant of summary judgment to NBA in regard to Mogg's motion to abrogate NBA's attorney-client privilege is REVERSED. The superior court's denial of Mogg's motion for summary judgment as to this tort and contract counterclaim is AFFIRMED.

**15.** Our conclusion that Mogg has made a prima facie case of fraud should not be taken as expressing the view that Mogg has in fact proven fraud. As to the scope of a fraud based abrogation of the attorney-client privilege, *see United Services Automobile Servs. v. Werley*, 526 P.2d 28, 32 (Alaska 1974).

**16.** Concerning our affirmance of the superior court's denial of Mogg's motion for summary judgment on his tort and contract counterclaim, we are of the view that genuine issues of material fact exist with respect to these claims.