BYLERS ALASKA WILDERNESS ADVENTURES INC., Jerry Byler and Darren Byler, Appellants,

v.

The CITY OF KODIAK, Martin Owen as agent and employee of the City of Kodiak and Martin Owen personally, and Larry Shaker and Eagle Adventures, Appellees.

No. S–12343.

Supreme Court of Alaska.

Dec. 12, 2008.

---

Allen Vacura, Stepovich & Vacura, Fairbanks, for Appellants.

Blake H. Call, Call, Hanson & Kell, P.C., Anchorage, for Appellees City of Kodiak and Martin Owen.

Before: FABE, Chief Justice,
MATTHEWS, EASTAUGH, CARPENETI,
and WINFREE, Justices.

*OPINION*

CARPENETI, Justice.

## I. INTRODUCTION

A judge initially assigned to a case granted a motion in limine which precluded several aspects of the plaintiff's past from being introduced at trial. Due to scheduling conflicts, the trial was reassigned to a judge who declined to follow the prior ruling and admitted much of the previously disallowed evidence. Because the evidentiary rulings were within the discretion of the court and, in any event, the disputed evidence was not dispositive of the jury's ultimate finding, we affirm.

## II. FACTS AND PROCEEDINGS

### A. Facts

Darren Byler (Byler)[1] and his father, Jerry Byler, own Bylers Alaska Wilderness Adventures, Inc. (BAWA), a charter boat business. Byler first began operating his business in Kodiak but decided to leave Kodiak for Homer, believing he could do more business in Homer, with its greater number of tourists. In the spring of 2000 Byler left Kodiak for Homer and started marketing his business to Homer's major booking agents.

In May 2000 North Country Charters, another charter company in Homer, referred a client from Nashville, Tennessee to BAWA. That client, Dr. William Kenner, arranged to charter a boat with BAWA for a fishing and sightseeing trip. Kenner's was the first inquiry BAWA received upon relocating to Homer.

Kenner later learned from Homer's harbormaster that BAWA was registered in Kodiak. In May 2000 Kenner called Kodiak's harbormaster, Marty Owen, to inquire further about the Bylers. Kenner testified that Owen reported: "I can't say anything good about Darren Byler." Upon Kenner's request, Owen referred him to other local charter operators, including Larry Shaker. Kenner then called Shaker. Shaker gave Kenner two examples of Byler's allegedly questionable history. Shaker first told Kenner that Byler had left a hunting party on an island and, due to his ill-preparedness for bad weather, was forced to abandon the hunting party. Byler had allegedly "used a skiff to drop them on a shore that was exposed to the wind, a lee shore, and that the weather was building and ... he was unable to go back and pick them up off the island." The hunting party was ultimately rescued by the Coast Guard.

As further evidence of Byler's unfitness, Shaker also told Kenner of an incident in which Byler's boat ran out of fuel and Byler attempted to tow the larger boat with a skiff across open waters in dangerous passages in Kodiak. Kenner repeated these stories to Owen, who did not deny Shaker's stories about Byler. Kenner testified that, although Owen did not specifically respond to any of Shaker's accusations, his tone of voice indicated that he affirmed Shaker's statements by saying "uh-huh, uh-huh" at appropriate moments. Kenner believed that Shaker sounded under the influence of alcohol when he recounted these stories, but Owen's fail-

---

1. Because most of the evidence in this case concerns the actions of Darren Byler, he is referred to as "Byler" in this opinion.

ure to discount Shaker's stories led Kenner to believe that Shaker's description of the incidents must be true.

As a result of his conversations with Owen and Shaker, Kenner cancelled his twelve-day charter with Byler. In addition to cancelling the trip, Kenner expressed his discontent to North Country Charters for referring him to Byler. Following this incident Byler did not receive any more referrals from local companies. After several weeks Byler left Homer due to the lack of business. Other charter companies in Homer appeared to be doing well and did not suffer from a lack of business.

In November 2000 another potential customer, Robert Abeyta, contacted Byler about chartering a boat for June 2001 when he planned to take his elderly mother on a trip to Alaska. Abeyta found Byler through internet research. Abeyta and Byler negotiated an agreement for the two-week charter. After reaching this agreement, Abeyta contacted Owen. Abeyta reportedly learned from Owen that Byler had a history of abandoning people to be rescued by the Coast Guard and was known to run out of fuel. Owen referred Abeyta to Shaker for further information. Shaker confirmed Owen's negative sentiments and added that Byler had issues with alcohol and drugs. Abeyta's mother died; as a result Abeyta did not complete the contract with Byler.

### B. Proceedings

Byler filed suit against the City of Kodiak, Owen, and Shaker, alleging defamation and business interference. Byler and Shaker reached a settlement, and in May 2002 the claims against Shaker were dismissed with prejudice. Byler pursued his case against Owen and Kodiak (these joint defendants, now appellees, will be referred to as Owen). Byler conceded that "Mr. Shaker's statements may be relevant for purposes of apportionment of fault."

In March 2005 Byler moved to exclude "any testimony or exhibits pertaining to [Byler's] Fish and Game violations, criminal arrests or convictions, or civil lawsuits." Byler argued that these subjects were irrelevant to the statements at issue and were more preju-

dicial than probative. Owen opposed the motion, arguing that Byler's past was essential to proving the truthfulness of Owen's statements about Byler. Superior Court Judge Harold M. Brown, the judge in Kenai assigned to the case, granted Byler's motion in limine. Judge Brown's order precluded Owen from introducing any "testimony or exhibits pertaining to any fish and game violations, criminal arrests or convictions as identified in the pleadings or civil lawsuits." The order also precluded Owen from introducing any testimony about Byler allegedly abandoning a hunting party. The order prohibited such testimony because "none of the members of the hunting party ... are listed as witnesses by the Defendant and [because] the Harbor Master denies any knowledge of the incident." Judge Brown added: "The Court expresses no opinion as to whether the information concerning the matters described above may later become relevant and admissible as a consequence of testimony or other events during trial."

The parties prepared for trial. In August 2005 Judge Brown set a trial date for February 27, 2006 in Homer. When it came time for trial in February 2006, Judge Brown was unavailable. Wanting to secure a trial date as soon as possible, the parties agreed to a March 2006 trial date in Anchorage before Superior Court Judge Peter A. Michalski.

Trial commenced on March 13, 2006. The attorneys conducted voir dire and selected the jury from a pool of forty-nine potential jurors. During voir dire, Owen's attorney asked a potential juror whether she had "any issues associated with folks who may have had previous convictions for assault or any other of a number of items." Byler immediately called for a mistrial, citing Judge Brown's motion in limine. After reviewing Judge Brown's motion in limine, Judge Michalski denied the motion for a mistrial. Judge Michalski warned Byler that, although he was instructing Owen not to mention the assault during voir dire, he believed the issues related to the assault and "these general areas are going to come in." Judge Michalski warned Byler that he "has to anticipate that there will be significant ... unpleasant evidence that is admissible against him."

Judge Michalski ruled that Byler's assault convictions were admissible and that the Coast Guard reports may be admissible as business records. Following this conference Byler raised a standing objection.

During opening statements, Byler objected to statements by Owen's attorney. Owen's attorney argued that testimony would show that Byler was "one of Kodiak's known drug dealers," which he supported by arguing that an anticipated witness, Larry Shaker, heard it from his wife, a "brown shirt, a fish and wildlife person for the State," who would know the identities of local drug dealers. When the court questioned the basis for this accusation, defense counsel defended this attack by arguing that it was supported by "a cop." Judge Michalski sustained an objection to this reference to Byler's alleged status as a drug dealer and offered a curative instruction.[2]

Throughout the trial Judge Michalski allowed testimony relating to several of the issues previously precluded by Judge Brown's order in limine. In particular, the assault, which Judge Michalski's modification of Judge Brown's order allowed, was mentioned by the defense in its opening statement. But the court later struck all references to it because Owen failed to prove that Byler was convicted of the assault.

At trial Owen testified that he did not recall confirming Shaker's statements to Kenner, and that he most likely just stayed quiet when Kenner repeated Shaker's statements. Owen also testified that, as Kodiak's harbormaster, he has a duty to investigate accusations before giving an opinion.

The jury returned a special verdict that found four of the five elements of defamation: It found that it was more likely true than not true that (1) Owen "communicated a statement or statements orally to a person other than [Byler]," (2) "the statement or state-

ments were reasonably understood by this person to be about [Byler]," (3) "the statement or statements were false," and (4) "the statement or statements were a legal cause of harm to [Byler]." However, the jury found that there was not clear and convincing evidence that Owen "either knew the statement or statements were false or acted in reckless disregard to their truth or falsity," and that it was not more likely true than not true that Owen "knew or reasonably should have known that the statement or statements were false." As the jury found that Byler did not prove all of the elements of defamation, it concluded that Owen was not liable.

Byler moved for a new trial. He argued that the evidence could lead to only one reasonable conclusion—that Owen was at least comparatively at fault. Judge Michalski denied the motion.

Byler now appeals on three grounds: (1) the court "committed plain error in failing to declare a mistrial," (2) the court "abused its discretion ... when it allowed the admission of evidence that was irrelevant and more prejudicial than probative," and (3) the court "abused its discretion in denying the motion for a new trial."

### III. STANDARD OF REVIEW

We review the trial court's decision to grant or deny a mistrial under the abuse of discretion standard.[3] Under that standard we will disturb the trial court's ruling only if, "after reviewing the whole record, we are left with a definite and firm conviction that the trial court erred in its ruling."[4] We may reverse and grant a new trial, even if a mistrial was not sought, only if we find there was plain error.[5] In alleging plain error the appellant "must shoulder the heavy burden of demonstrating that the alleged misconduct raises a substantial and important question"

2. Judge Michalski admonished Owen's attorney and gave the following instruction: "Ladies and gentlemen, the Court sustains the objection to the reference to Mr. Shaker and his wife's employment and the references to information through that process. You're to disregard that reference and to the—that statement at this time."

3. *Walker v. State,* 652 P.2d 88, 92 (Alaska 1982).

4. *Roussel v. State,* 115 P.3d 581, 585 (Alaska App.2005).

5. *Randall v. State,* 583 P.2d 196, 200 (Alaska 1978).

and must show that the error was "obviously prejudicial." [6]

■■ The trial court's evidentiary rulings are also reviewed under the abuse of discretion standard.[7] We leave questions of admissibility to the sound discretion of the trial court, reversing only if, upon review of the record as a whole, we are left with "a definite and firm conviction that the trial court erred in its ruling and the error affected the substantial rights of a party." [8]

Finally, we have held that "the grant or refusal of a motion for a new trial rests in the sound discretion of the trial court, and we will not disturb a trial court's decision on such a motion except in exceptional circumstances to prevent a miscarriage of justice. We will uphold a refusal to grant a new trial if there is an evidentiary basis for the jury's decision." [9]

## IV. DISCUSSION

### A. Despite Defense Counsel's Objectionable References to Byler's Character, the Court Did Not Err in Refusing To Grant a Mistrial.

■■ Byler appeals the court's denial of his mistrial motion following an objectionable question during voir dire and the court's refusal to grant a new trial following similarly prejudicial remarks during the opening statement.[10] During voir dire, Owen's attorney asked a juror if she had "any issues associated with folks who may have previous convictions for assault." Byler immediately moved for a mistrial, arguing that the question was "highly prejudicial, unfair, and this panel shouldn't be exposed to it." After excusing the jury panel and hearing argument, the court denied the motion, instructing the attorneys to "quit trying to familiarize [the jurors] with the issues of the action." During the defense's opening statement, counsel stated that Byler had been convicted of assault, stated that Byler left "hunters on the beach that had to be rescued by the Coast Guard," and stated that Byler was "one of Kodiak's known drug dealers." Byler argues that the court's failure to order a mistrial on the basis of the defense's opening statement constituted plain error and thus merits reversal even though he did not move for a mistrial.

■ Plain error is "an obvious mistake that creates a high likelihood that the jury will follow an erroneous theory resulting in a miscarriage of justice." [11] We have held that a party alleging plain error has a heavy burden to show that the error was "both obvious and very likely consequential." [12] We have found plain error where the superior court failed to give a comparative fault instruction to the jury in a negligence case, despite clear law mandating courts to give such an instruction.[13]

■ Byler argues that the improper voir dire question, in which Owen's attorney implied that Byler had committed assault, set a prejudicial tone that continued throughout

---

6. *Id.* (internal citations omitted).

7. *Dobos v. Ingersoll*, 9 P.3d 1020, 1023 (Alaska 2000).

8. *Id.*

9. *Reeves v. Alyeska Pipeline Serv. Co.*, 56 P.3d 660, 668 (Alaska 2002) (internal citations omitted).

10. Owen argues that Byler waived this claim because he failed to raise it in his Statement of Points on Appeal. He further contends that Byler additionally waived his second claim, in which he argues the superior court erred in its evidentiary rulings. Although Byler's Statement of Points on Appeal does not explicitly list these issues, these claims are not waived because they are subsumed under his second point on appeal:

"[t]he trial court erred in not granting Plaintiff's Motion for a Mistrial." Furthermore, we will consider claims even if they are not explicitly stated in the points on appeal if the appellant raised the issue before the lower court and both parties have briefed the issue. *Native Village of Eklutna v. Bd. of Adjustment for the Mun. of Anchorage*, 995 P.2d 641, 646 (Alaska 2000). Byler clearly raised these issues before the lower court by frequently objecting to the court's admission of the contested evidence, and both parties' briefs treat these issues. Therefore, we will consider all three of Byler's claims on appeal.

11. *Shields v. Cape Fox Corp.*, 42 P.3d 1083, 1087 (Alaska 2002) (internal citation omitted).

12. *Id.*

13. *Id.*

the defense's opening statement. But Judge Michalski promptly gave a curative instruction[14] and warned defense counsel that any reference to Byler's alleged drug-dealing would be inadmissible unless supported by evidence more credible than hearsay statements from a witness's spouse or defense counsel's contention that "[e]very person [defense counsel] called in Kodiak has said [Byler] is a coke head." In light of Judge Michalski's ruling in Byler's favor and the court's curative instruction, we conclude that Byler has not met his heavy burden of demonstrating an obvious mistake that erroneously influenced the jury in a consequential manner.[15]

## B. The Court Did Not Err in Declining To Follow the Previous Motion in Limine.

Prior to trial Judge Brown ruled that fish and game violations, criminal arrests or convictions, and defense evidence regarding the hunting trip accusations would be excluded, while leaving open the possibility that trial testimony or other trial events may render the evidence relevant and therefore admissible. During the trial Judge Michalski allowed the admission of some of that evidence.

Byler contests the admission of this evidence. He contends that the evidence is irrelevant and unfairly prejudicial and Judge Michalski erred in effectively overruling Judge Brown's previous order. There are essentially two facets to this claim: (1) Judge Michalski violated the "law of the case" doctrine by overruling a previous motion in li-

mine and (2) the admission of this evidence was erroneous. Neither has merit.

### 1. A superior court judge's failure to follow an order of a prior superior court judge does not violate the law of the case doctrine.

The law of the case doctrine in Alaska "generally requires adherence by a lower court to an appellate court's decision and generally prohibits reconsideration of issues which have been adjudicated in an appeal of the case."[16] But when one superior court judge makes a ruling, that superior court judge is succeeded by another superior court judge on the same case, and the subsequent judge declines to follow a previous order from the prior judge—we have held that the doctrine does not apply.[17]

In *Stepanov v. Gavrilovich*,[18] we upheld a judge's decision not to follow his colleague's earlier decision in a case.[19] We relied on federal case law, both from the United States Supreme Court and the Ninth Circuit Court of Appeals, and held that one judge may decline to follow the earlier decision of a colleague where the later judge is "convinced that [the previous] ruling was erroneous."[20] We noted in *Stepanov* that the parties were not involved in forum shopping and the change of judges was necessary due to the earlier judge's illness.[21] In *West v. Buchanan*,[22] we reiterated that "it is entirely reasonable for a judge whose responsibility it is to try a case to reconsider and reverse an earlier ruling" if the judge believes the prior ruling was erroneous.[23] In *Hayes v. Xerox Corp.*[24] we similarly found that "the doctrine

---

**14.** *See supra* n. 2.

**15.** Although we hold that the trial judge acted appropriately in denying Byler's motion for a mistrial, we note our strong disapproval of defense counsel's trial tactics. Counsel repeatedly referred, in the jury's presence, to irrelevant and unsubstantiated allegations of wrongdoing by Byler, to which Byler properly objected, requiring the court to issue multiple cautionary instructions to the jury. In our opinion, there was no excuse or justification for counsel's actions, which bordered on sharp practice.

**16.** *Mogg v. Nat'l Bank of Alaska,* 846 P.2d 806, 810 (Alaska 1993).

**17.** *See id.* at 810 n. 8; *Hayes v. Xerox Corp.*, 718 P.2d 929, 934 (Alaska 1986).

**18.** 594 P.2d 30, 36 (Alaska 1979).

**19.** *Id.*

**20.** *Id.*

**21.** *Id.*

**22.** 981 P.2d 1065 (Alaska 1999).

**23.** *Id.* at 1067 (internal citations omitted).

**24.** 718 P.2d 929 (Alaska 1986).

of law of the case is inapplicable" in situations where one superior court judge reverses a prior judge's order.[25]

Here, Judge Michalski admitted evidence the exclusion of which he believed to be improper. He notified the parties that the previously excluded evidence would come in because "assuming that it relates to the defamation, ... it, in fact, shows the truth of the statement made, and, therefore, it's relevant as the defense to defamation, being truth of the statement made." Judge Michalski also noted that he may have properly gone further in his ruling: "I think it may very well be that by limiting, for example, references and proofs of criminal behaviors to convictions[,] that actually may be going farther than defamation requires of the Court." Thus, although Judge Michalski reversed what he believed to be an erroneous ruling, he respected the spirit of the ruling by limiting the evidence of bad acts to convictions. Judge Michalski's reconsideration of Judge Brown's earlier ruling in no way violated the law of the case doctrine.

### 2. The superior court's evidentiary rulings were within its discretion.

Having concluded that it was not error for Judge Michalski to reverse the previous ruling in this case, we turn now to whether the subsequent rulings admitting evidence were erroneous. Byler specifically contests the court's admission of evidence of the assault, the Coast Guard letter of concern, a conviction for failing to comply with reporting requirements, and the insinuation that Byler was a drug dealer. The admission of this evidence, Byler contends, deprived Byler of a fair trial and improperly influenced the jury.

To place this dispute in context, it must be remembered that Byler's suit listed three statements and one failure to deny that he claimed were defamatory: (1) Owen's statement "I can't say anything good about Darren Byler"; (2) Owen's statement to Abeyta that Byler abandoned hunters to be rescued

by the Coast Guard; (3) Owen's statement to Abeyta that Byler was known to run out of fuel; and (4) Owen's failure to deny or refute Shaker's statements about Byler to Kenner.

▮ In defense of Byler's claims, Owen offered evidence that his statements were true. Alaska, like the majority of jurisdictions, follows the Restatement of Torts which considers truth to be a defense to defamation.[26] In response, Byler argued principally that the evidence was irrelevant and prejudicial.

▮ As to relevancy, evidence is relevant if it tends to make the existence of a material fact more or less likely.[27] In general, all relevant evidence is admissible. The Alaska Rules of Evidence set out several exceptions to that rule. Byler contends that the admission of the contested evidence violated two exceptions in particular: (1) character evidence is generally inadmissible and never admissible to prove specific conduct (Rule 404), and (2) the evidence at issue here is more prejudicial than probative (Rule 403). We consider each of these claims in turn.

▮ In Alaska the admission of character evidence is governed by Evidence Rule 404. Rule 404 provides generally that "[e]vidence of a person's character or trait of character is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion," but it then lists several exceptions. Judge Michalski justified his ruling allowing some character evidence—the two pieces of evidence concerning Byler's conviction for violating reporting requirements and the Coast Guard letter of concern—by finding that the evidence was relevant, noting that it was "an integral part of this case." The character evidence that Owen introduced was not introduced to show that Byler acted in a certain way, but rather that Owen may have had reason to believe Byler was an unsafe fisherman and therefore Owen may have had a defense to defamation.

25. *Id.* at 934.

26. *Fairbanks Pub. Co. v. Pitka,* 376 P.2d 190, 192–93 (Alaska 1962) ("The truth of a defamatory statement of fact is a complete defense to an

action for defamation."); *see also* RESTATEMENT (SECOND) OF TORTS § 581A (1977).

27. Alaska R. Evid. 402.

Reasonable minds could disagree as to whether the evidence that Owen presented to support his defense of truth was more prejudicial than probative (and therefore excludable on Rule 403 grounds). In order for the evidence to be relevant, and thus probative, to this action, it must go to the question of whether Owen had reason to believe that Byler was an unsafe boat operator. We examine each of Owen's four pieces of evidence (or allegations) concerning Byler with this question in mind.

The suggestion that Byler was a drug dealer bears little direct relevance on the question of whether he was an unsafe sailor. At the same time, it does have the potential to improperly bias the jury against him. This insinuation is clearly more prejudicial than probative. But there was no error here: The court did not admit this evidence. Byler argues that the court erred in "its decision to allow reference to the allegation." Judge Michalski did not, however, "allow reference" to the allegation; as soon as the allegation was raised, the court sustained Byler's objection to the comment and offered a curative instruction.

Byler next contests the court's admission of evidence regarding Byler's allegedly assaultive behavior. During the cross-examination of Kenner, Owen's attorney asked if Kenner would be wary to charter a boat with someone "convicted of assault for running his skiff up against other folks." Byler objected and asked Owen to produce proof of convictions for any assaults. When Owen was unable to produce proof of a conviction, the court sustained Byler's objection and struck all references to assaults. Like the insinuation that Byler was a drug dealer, the question of the admissibility of evidence of assaultive behavior is misplaced because the court struck all references to such behavior.

■ Byler next takes issue with Judge Michalski's admission of the Coast Guard letter of concern into evidence. The court ruled that the letter of concern—which the Coast Guard issued after fuel problems aboard Byler's boat were not reported—was admissible for the purpose of cross-examining Byler's witnesses. After the court allowed hypothetical questions based on the letter, Owen then questioned another witness about the letter, characterizing the situation by noting that 25% of Byler's trips had been referred to the Coast Guard. A letter from the Coast Guard that details Byler's boating misdeeds, unlike the comments about drugs and assault, relates directly to the question of whether Owen had reason to believe that Byler was an unsafe charter operator. In fact, this letter was issued in response to the incident involving the allegedly abandoned hunters, the very incident about which Owen had warned Abeyta. There was no error in admitting the evidence.

■ Finally, Byler contests Judge Michalski's admission of Byler's conviction for violation of reporting requirements. Byler contends that the conviction is stale, thereby making it more prejudicial than probative for its impeachment value. Judge Michalski allowed evidence of the conviction, reasoning that the evidence was admissible as a basis for the knowledge that led Shaker to his beliefs about Byler's reputation. The admission went to the issue of Byler's reputation, not to impeach Byler as Byler's appeal suggests. Judge Michalski supported his ruling by reasoning that this conviction bears on the "question of whether one would do business with him" and "the basis for [Shaker] having thought this of [Byler]." Although this appears to us to be a close question since the conviction for false reporting occurred twenty years earlier, it is arguable that it had some continuing effect on Byler's reputation. Accordingly, we are not convinced the court abused its discretion in admitting the evidence.

■ Further leading to our decision to uphold Judge Michalski's evidentiary rulings is our conclusion that, even if error, the rulings were harmless to Byler. Byler argues that Owen engaged in "character assassination" and that the admission of these pieces of evidence biased the jury against him. But the jury concluded that Owen's statements suggesting that Byler was an unsafe operator were false. And the jury's finding that Owen did not know the statements to be false, the only question that the jury found against Byler, is sufficiently sup-

ported by other evidence introduced at trial: Owen believed Shaker's statements to be true because Shaker himself believed they were true.

We accordingly find that the court did not abuse its discretion in admitting evidence that was relevant to Owen's defense.

### C. The Superior Court Did Not Err in Denying Byler's Motion for a New Trial.

After the jury returned its verdict that Owen did not know the statements were false and did not act in reckless disregard of their falsity, Byler moved for a new trial. Byler sought a new trial under Alaska Civil Rule 59(a) because "[g]iven the evidence presented, reasonable jurors would have found that Mr. Owen was at least comparatively at fault." The trial court denied the motion.

■■■ On appeal, Byler must show that there was no evidentiary basis for the jury's finding.[28] But there is substantial support for the finding that Owen believed Shaker's statements were true. First, Shaker testified that he believed his statements about Byler's past to be true. Second, Owen testified that he did not contest Shaker's story although he did not form an opinion on its truth or falsity. If Owen had no opinion on the falsity of the statement and trusted Shaker's assessment, which Shaker himself believed to be true, it is reasonable to conclude that he repeated the statements without believing them to be false. Because there was an evidentiary basis for the jury's finding, the court did not err in failing to grant a new trial.

## V. CONCLUSION

The superior court did not commit plain error in failing to declare a mistrial *sua sponte* during Owen's opening statement, was within its discretion to deem certain types of evidence admissible, and did not abuse its discretion in failing to grant a new

**28.** *Reeves v. Alyeska Pipeline Serv. Co.,* 56 P.3d

trial. We therefore AFFIRM the decision of the superior court in all respects.