**Debbie L. Painter CUSHING, Appellant,**

v.

**Rodger A. PAINTER, Appellee.**

**No. 6491.**

Supreme Court of Alaska.

July 15, 1983.

As Amended Aug. 30, 1983.

Donna C. Willard, Willoughby & Willard, Anchorage, and Edward A. Stahla, Christianson, Stahla & Cole, Sitka, for appellant.

Thomas W. Findley and Brad J. Brinkman, Law Offices of Findley & Brinkman, Juneau, for appellee.

Before BURKE, C.J., RABINOWITZ, and MATTHEWS, JJ., and SOUTER,* Superior Court Judge.

OPINION

RABINOWITZ, Justice.

This is an appeal from a judgment modifying a dissolution decree in regard to cus-

---

* Souter, Judge, sitting by assignment made pursuant to article IV, section 16 of the Constitu-   tion of Alaska.

tody of the parties' seven-year-old daughter, Johanna Painter.[1] Rodger and Debbie Painter[2] obtained a dissolution in March 1978. The parties drafted the dissolution decree, which gave custody of Johanna to Debbie and provided for visitation as follows:

Custody to Rodger Painter February to May 1978. Subsequent arrangements should be reached by mutual agreement until Johanna reaches school age, when each parent will have custody one full year at a time.

Johanna lived with the Cushing family in Sitka while she was attending kindergarten during the 1980–81 school year.[3] Debbie and Rodger subsequently disagreed over whether Johanna's year in kindergarten should be counted as her first year in school within the meaning of the dissolution decree and over which parent would have custody of Johanna for the initial year of school. The decree did not address this question.

Debbie became convinced that alternating custody according to the decree would be detrimental to Johanna. Since the 1981–82 school year was fast approaching, Debbie filed a motion to modify custody in order to gain sole custody of Johanna on August 11, 1981. The motion was served on Rodger on August 13, 1981.

A scheduling conference was held by telephone between the court and counsel on August 14, 1981, at which time it was agreed that an expedited interim hearing would be held in Juneau[4] on August 20, 1981, for the purpose of determining where Johanna would reside for the 1981–82 school year. The "interim" hearing, at which the parties presented only four witnesses apiece in accordance with a prior agreement, became the basis for the custody determination at issue in this appeal. After a two-day hearing, the superior court modified the dissolution decree and granted permanent custody of Johanna to her father, with visitation rights in her mother.[5]

The superior court based its custody decision upon the criteria set out in AS 09.55.-205.[6] After weighing the first five factors and finding that both families would provide a good home for Johanna, the superior court concluded that the determinative factor was that Debbie "has hindered and interfered with the maintenance of an open and loving frequent relationship between Johanna and her father ...."

One of the specifications of error advanced by Debbie in this appeal is that the

1. Johanna was born May 15, 1975.

2. Debbie married a Sitka fisherman, Greg Cushing, in March 1980.

3. This family included Johanna's half-brother Michael, Debbie's child from a prior marriage, and her half-sister Rebekah, a child of the Cushing marriage.

4. At this time, Johanna was in Juneau visiting her father for the summer.

5. Rodger filed a cross-motion to modify custody on the first day of the hearing.

6. At the time the superior court reached its decision in this case, AS 09.55.205 provided:
Judgments for custody. In an action for divorce or for legal separation the court may, if it has jurisdiction under AS 25.30.020, and is an appropriate forum under AS 25.30.050 and 25.30.060, during the pendency of the action, or at the final hearing or at any time thereafter during the minority of any child of the marriage, make an order for the custody of or visitation with the minor child which may seem necessary or proper and may at any time modify or vacate the order. Any appointment of a guardian ad litem for a child shall be made under the terms of AS 09.65.130. The court shall determine custody in accordance with the best interests of the child. Neither parent is entitled to preference as a matter of right in awarding custody of the child. In determining the best interests of the child the court shall consider all relevant factors including:
(1) the physical, emotional, mental, religious and social needs of the child;
(2) the capability and desire of each parent to meet these needs;
(3) the child's preference;
(4) the love and affection existing between the child and each parent;
(5) the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity;
(6) the desire and ability of each parent to allow an open and loving relationship between the child and his other parent.

custody hearing conducted by the superior court was "procedurally infirm." She argues that these "infirmities" may be partially attributed to the fact that the hearing was held in an expedited fashion at the parties' request so that a decision could be reached before the commencement of the school year on August 27, 1981. Furthermore, she argues that the hearing was defective because the parties were not on notice that it would result in a permanent custody determination. A review of the record leaves no doubt that Debbie is correct in her contention that the parties to this dispute contemplated that the hearing scheduled for August 20, 1981, was to be limited to the issue of where Johanna would attend school that year. Debbie further argues that the expedited nature of the hearing, coupled with the lack of notice as to potential custodial consequences, resulted in the superior court's reaching a permanent custody decision upon an inadequate record and deprived her of a full and fair hearing. She contends that in the aggregate these infirmities amount to a violation of her due process rights.[7]

■ It is essential to contested custody proceedings that the parties be afforded a hearing which grants them the opportunity to present the quantum of evidence needed to make an informed and principled determination. The importance of the trial court's custody determination is clear:

> The literature discussing the detrimental effects parental divorce can have on children is large and growing. It lends credence to the old sayings, that as the twig is bent, so will the tree be inclined, and that the child is father of the man. A child may carry with him for the rest of his life—more than half a century—the effect of a court's custody award.[8]

■ Despite the fact that the hearing was initially contemplated to be one that would determine the question of Johanna's interim custody for the impending school year, the superior court transformed the proceeding into one that decided the question of permanent custody. Review of the record persuades us that in the particular circumstances of this case the proceeding which was held did not afford basic fairness to the appellant.[9]

It is clear from the record that Debbie had inadequate time, merely five days, to prepare for the hearing which was held. At best, the record in this case reflects minimal preparation. Further, because of the time constraints imposed, the parties were limited to four witnesses apiece. Acting under the impression that the expedited hearing was to determine solely the question of interim custody for the impending school year, Debbie chose not to present any rebuttal testimony. Thus, we conclude that the superior court's award of custody must be vacated and the matter remanded for a full hearing for the purpose of determining permanent custody.[10] Custody shall be determined in accordance with the original dissolution decree pending the superior court's final disposition of this matter. Johanna should spend the 1983–84 school year with her mother since she has been in the custody of her father since August 1981.[11]

REVERSED and REMANDED for a full hearing to determine the question of permanent custody.

---

7. The Fourteenth Amendment to the United States Constitution provides in relevant part:
 ... nor shall any State deprive any person of life, liberty, or property without due process of law; ...
 Article 1, section 7 of the Constitution of the State of Alaska provides in part:
 *Due Process.* No person shall be deprived of life, liberty or property without due process of law.

8. *Veazey v. Veazey,* 560 P.2d 382, 386 (Alaska 1977).

9. *Compare Sanguinetti v. Sanguinetti,* 628 P.2d 913 (Alaska 1981).

10. Inherent in our holding that in the particular factual context of the record the hearing which was held did not comport with due process standards is our conclusion that the record does not establish a waiver on Debbie's part as to the procedural infirmities implicated in the hearing. *See Milne v. Anderson,* 576 P.2d 109, 112 (Alaska 1978).

11. The foregoing is without prejudice to Rodger Painter's moving in the Superior Court for a determination of interim custody of Johanna for the 1983–84 school year. *Craig v. McBride,* 639 P.2d 303 (Alaska 1982).