858 P.2d 315 (1993)
T.M.C., Appellant,
v.
S.A.C., Appellee.
No. S-5259.
Supreme Court of Alaska.
September 3, 1993.
*316 David C. Stewart, Law Office of Hickey & Stewart, Anchorage, for appellant.
Barbara A. Norris, Law Office of Barbara A. Norris, Anchorage, for appellee.
Before MOORE, C.J., and RABINOWITZ, BURKE, MATTHEWS and COMPTON, JJ.

OPINION
MOORE, Chief Justice.

I. INTRODUCTION
Soon after his divorce from S.A.C., T.M.C. sought to modify the trial court's custody order, which granted the couple joint custody over their daughter K.C., on the grounds that changed circumstances required an award of sole custody to him. The trial court did not find the changed circumstances that T.M.C. alleged, but sua sponte found that a different change of circumstances warranted an award to S.A.C. of sole custody. We affirm.

II. FACTS AND PROCEEDINGS
T.M.C. and S.A.C. obtained a divorce in 1990. Judge J. Justin Ripley ordered that they share joint legal custody of their then 2 1/2 year old daughter, K.C., with S.A.C. to have sole and primary physical custody. The issue of custody was "highly contested by the parties," and though Judge Ripley found that cooperation between T.M.C. and S.A.C. was possible, he also found that "because the parties have not previously demonstrated the ability to cooperate regarding these matters, [S.A.C.] should have the final say" as to unresolvable disputes with T.M.C.
*317 During the proceedings, T.M.C. alleged that K.C. had suffered sexual abuse. Judge Ripley ordered an investigation by the Division of Family and Youth Services (DFYS), in which S.A.C. cooperated fully. The judge concluded that the tests, "although cautiously written, square with the belief that said allegations are groundless." In determining whether T.M.C. was fit to have custody, Judge Ripley also considered the fact that T.M.C. continued allegations of sexual abuse even after the DFYS investigation ended.
Just seven months later, T.M.C. filed a motion for change of custody, again claiming that K.C. had suffered sexual abuse. T.M.C. did not list all the allegations in detail, stating that the time required to do so was an "unavailable luxury." Once again, S.A.C. consented to counseling sessions for K.C., and cooperated in a new DFYS investigation. S.A.C.'s opposition brief requested an evidentiary hearing and a dismissal of the motion, but made no request for a change of custody in her favor. Her subsequent trial brief, however, requested sole custody on the grounds that "any concept of cooperation and communication between [T.M.C.] and [S.A.C.] has been so undermined by [T.M.C.'s] harassment that joint legal custody cannot be carried out."
After conducting an evidentiary hearing, Judge John Reese issued his findings. He concluded that K.C. had not suffered sexual abuse. Though he found that T.M.C.'s motion was not "for the purpose of harassment," Judge Reese did not find T.M.C.'s behavior conducive to maintaining joint custody:
4. Since the divorce [T.M.C.] has acted in a self-centered and manipulative way indicating he is obsessed with his ex-wife. His letters, though couched in terms of taking care of business, have been rude, condescending and argumentative. His approach in this case started as defiant, closed and arrogant... .
5. While on the stand [T.M.C.] was polite and courteous but his answers to cross-examination were initially evasive and focused on reiterating his own personal argument. Only after a warning from the bench did he quit trying to be manipulative and turn each answer into another shot.
6. Given [T.M.C.'s] approach, joint decision making cannot work in this case. Sole decision making regarding health and other important issues is the only viable alternative. [T.M.C.'s] own agenda clouds his view. He is so involved in anger and resentment that he is missing opportunities to do something for [K.C.]... .
... .
19... . Since the divorce [S.A.C.] has matured. Her statements in court were direct and were corroborated by the evidence. She has made sound decisions surrounding [K.C.] [T.M.C.] has been obsessed with insults and criticism against [S.A.C.]
In his legal findings, Judge Reese rejected T.M.C.'s claim of changed circumstances regarding S.A.C.'s care and protection of K.C. Nonetheless, the judge concluded that "[a] change of circumstances does exist with regard to the ability of the parents to communicate and make decisions together." He therefore awarded sole legal custody to S.A.C., concluding that making her the sole decision maker was in K.C.'s best interest. This appeal followed.

III. DISCUSSION
T.M.C.'s sole argument on appeal relies on the language of AS 25.20.110(a), which states two prerequisites for modification of judicial custody orders:
An award of custody of a child or visitation with the child may be modified if the court determines that a change in circumstances requires the modification of the award and the modification is in the best interests of the child.
The parent who moves for modification bears the burden of proving a substantial change in circumstances. Long v. Long, 816 P.2d 145, 150 (Alaska 1991). T.M.C. argues that because he failed to prove the change of circumstances that he alleged, one of the two required elements for a modification of custody was not present. *318 Therefore, the trial court should have simply denied his motion, without taking further action. According to T.M.C., the trial court awarded legal custody to S.A.C. on the basis of a best interests of the child analysis alone, in violation of AS 25.20.110(a).
S.A.C. challenges T.M.C.'s characterization of Judge Reese's decision. As S.A.C. correctly notes, Judge Reese found a change in circumstances, simply not the change that T.M.C. had alleged. S.A.C. argues that such a sua sponte finding is proper, given the overriding concern of the court for the child's best interest.
Whether the trial court, on its own motion, can find a change of circumstances in a child custody case is a question of law. Therefore, this court reviews the matter de novo, and will adopt the rule of law that is most persuasive in light of precedent, reason, and policy. Ford v. Municipality of Anchorage, 813 P.2d 654, 655 (Alaska 1991).
Where a court orders joint custody, many jurisdictions allow trial courts, on their own motion, to either make such an order, modify it, or do both. See Ann M. Haralambie, Handling Child Custody Cases § 7.14 (1983 & Supp. 1991). In Beck v. Beck, 86 N.J. 480, 432 A.2d 63 (1981), the court held that because "[t]he paramount consideration in child custody cases is to foster the best interests of the child[,] ... [i]t would be incongruous and counterproductive to restrict application of this standard to the relief requested by the parties to a custody dispute." Id. 432 A.2d at 71. Accordingly, the court upheld the trial court's sua sponte custody determination. Id. Similarly, in some states statutory provisions expressly permit the court to make or modify joint custody decrees on its own motion, if the best interests of the child so require. See, e.g., Cal.Civ.Code § 4600.5(i) (West Supp. 1993) (permitting sua sponte modification of decrees); Ill. Ann. Stat. ch. 40, para. 602.1(b) (Smith-Hurd Supp. 1992) (allowing court on its own motion to "consider an award of joint custody").
When courts strike down a sua sponte award or change of joint custody, they often do so in cases where neither party raised the issue of custody or where the court below heard no testimony on the issue. See, e.g., In re Marriage of Birt, 157 Ill. App.3d 363, 109 Ill.Dec. 691, 696, 510 N.E.2d 559, 564 (1987) (overturning award, despite statute permitting sua sponte action, where custody not an issue and trial court received no testimony), appeal denied, 116 Ill.2d 556, 113 Ill.Dec. 292, 515 N.E.2d 101 (1987). Similarly, the Beck court stressed that a sua sponte award of joint custody must have support in the record in order to survive a challenge. 432 A.2d at 71. Though it allowed sua sponte awards, the court preferred that the parties have the chance to address any new issues that the trial court may raise. Id.
Similarly, under Alaska law parties in a custody proceeding have a right to an adequate hearing, "which grants them the opportunity to present the quantum of evidence needed to make an informed and principled determination." Cushing v. Painter, 666 P.2d 1044, 1046 (Alaska 1983). Thus in Cushing the trial court erred by using an interim custody hearing, with limited preparation time and limited presentation of witnesses, as a vehicle for a permanent custody award. Id. Similarly, in a case involving child support rather than custody, this court overturned the trial court's support award, because neither party raised the issue in the pleadings and the husband had no chance to present evidence. Streb v. Streb, 774 P.2d 798, 801 (Alaska 1989).
Nonetheless, Alaska law gives courts especially broad discretion in child custody cases. "[D]uring the pendency of the action, or at the final hearing or at any time thereafter during the minority of a child of the marriage," the trial court can "make, modify, or vacate an order for the custody of or visitation with the minor child that may seem necessary or proper," in accordance with the best interests of the child. AS 25.24.150(a), (c); see also AS 25.20.060(a), (c) (allowing award of joint custody if in best interests of child). In such cases, the trial court may decide issues *319 on its own motion, as long as a party has raised them and both sides have the opportunity to present full testimony.[1]
Here, the trial court had the discretion to award custody to S.A.C.T.M.C.'s motion clearly raised the issue of custody. Though S.A.C. filed no cross-motion seeking a change of custody, her trial brief put T.M.C. on notice that she too would make a changed circumstances argument, supporting a change of custody in her favor. Judge Reese held an evidentiary hearing, and T.M.C. does not claim that he was denied a full opportunity to present his evidence and to argue the merits of his case.
Judge Reese's sua sponte finding related to the change of circumstances analysis, rather than the companion best interests of the child analysis. Nonetheless, the two prongs of the test are sufficiently interwoven to permit him to act on his own motion. Moreover, as S.A.C. correctly notes, T.M.C. has not challenged Judge Reese's findings themselves. T.M.C. argues merely that Judge Reese should not have engaged in a best interests of the child analysis in the first place, not that the analysis itself was erroneous. The record clearly shows T.M.C.'s lack of cooperation with the joint custody arrangement. Sustained noncooperation between the spouses is grounds for denying joint custody, because lack of cooperation hinders good communication in the best interests of the child. See, e.g., Farrell v. Farrell, 819 P.2d 896, 899 (Alaska 1991). Therefore, Judge Reese had the discretion to find that the continued lack of cooperation between the parties was a change of circumstances sufficient to award S.A.C. sole legal custody of K.C.
AFFIRMED.
RABINOWITZ, J., concurs.
RABINOWITZ, Justice, concurring.
I agree with this court's holding that a trial court, on its own motion, can find a change of circumstance in a child custody case. Nevertheless, on the basis of the superior court's findings, and study of the record, I would take the unusual step of retaining jurisdiction, and ordering the parties to brief whether or not the superior court's findings relating to sexual abuse of the parties' child are clearly erroneous.[1] *320 Given the paramount importance accorded to the welfare and best interests of the child I think it imperative that this sexual abuse issue be reviewed by this court before the superior court's custody ruling is finalized.
NOTES
[1] S.A.C. also cites to statutory language allowing custody modifications "if the court determines" that a change of circumstances exists, AS 25.20.110(a) (emphasis added), and argues that this language allows sua sponte determinations. We disagree. Such language is common throughout the Alaska Statutes, but to imply that it permits the courts to act sua sponte on a wide range of issues would amount to a serious deprivation of due process. Rather, the court's power to decide child custody issues sua sponte derives from the broad discretion granted under statutory law.
[1] The superior court, in part, made the following findings regarding sexual abuse:

7. Physical placement has been with [S.A.C.]. It is impossible to absolutely prove the negative, that there has been no child sexual abuse. In our system, the burden of proof is placed on [T.M.C.] as moving party, to prove that it is more likely than not that [K.C.] is at risk, and that [S.A.C.] has failed to take precautions for her safety. The court has considered whether it was reasonable for [S.A.C.] not to believe [K.C.] was abused, and whether she has acted reasonably whether she believes it or not.
8. The evidence indicates that there was a report from [K.C.] and that [T.M.C.] told lots of people about it including Dr. [A]. Dr. [A] has a reputation for overreacting and findings [sic] things others don't believe are present.
... .
10. The content of the first interview was inconclusive. Although [K.C.] reported her bottom and vagina were touched and that [S.A.C.'s boyfriend] peed on her we don't know if these statements were coached or told before. The interviewer did not follow up to determine if this was personal touch or hygiene touching which is as likely a conclusion as any other. [S.A.C.'s boyfriend] peeing was not determined to be sexual and other explanations were not pursued. The interview does not prove anything, only raises issues.
... .
12. These issues were followed up by therapist [B], by [C], by [D], by Dr. [E] and by the Custody Investigator's Office. These professionals did not see diagnostic signs which would be expected in an abuse situation. There was not physical or emotional damage which would be typical of a victim of sexual abuse.
... .
14. [T.M.C.] took [K.C.] back to see Dr. [A] in January 1992. Dr. [A] obtained a drawing containing a penis. Dr. [A]'s evaluation had already been challenged in this case. She appears to be available to reach rapid conclusions about child sexual abuse which are used by those persons seeking such opinions. The court does not find Dr. [A]'s testimony persuasive.
15. There is no absolute resolution of the sexual abuse allegation. Children are sexual beings and [K.C.] is at an actively sexual developmental stage. Sexual issues are normal at this age.
16. This court concludes it is more likely than not that [K.C.] was not sexually abused by [S.A.C.'s boyfriend].