**Gary E. DOBOS and Julma L. Swartout, Appellants/Cross–Appellees,**

**v.**

**Rick D. and Eva INGERSOLL, as parents of Margarita Ingersoll, minor, Appellees/Cross–Appellants.**

Nos. S–8567, S–8707.

Supreme Court of Alaska.

Oct. 6, 2000.

---

**22.** *Exxon Corp. v. Alvey,* 690 P.2d 733, 744 (Alaska 1984).

R.N. Sutliff, Anchorage, for Appellants/Cross-Appellees.

Tim Dooley, Anchorage, for Appellees/Cross–Appellants.

Before MATTHEWS, Chief Justice, EASTAUGH, FABE, BRYNER, and CARPENETI, Justices.

## OPINION

MATTHEWS, Chief Justice.

## I. *INTRODUCTION*

Gary Dobos hit pedestrian Margarita Ingersoll with his taxi. At the scene, taxi passenger Dorman Lodge made a statement to a police officer. This statement was admitted at the personal injury trial by the trial court under the present sense impression exception to the hearsay rule. The jury subsequently found Dobos liable for the accident. Dobos appeals the decision to admit this statement, claiming that it prejudiced his trial. He also appeals the trial court's denial of his motion for a directed verdict. Inger-

soll cross-appeals, contesting the trial court's decision not to award attorney's fees under Alaska Civil Rule 37(c)(2). Because the admission of the statement was harmless, the denial of the directed verdict was proper, and the denial of Rule 37(c)(2) fees for failure to admit negligence and causation was appropriate, we affirm the trial court in those respects. Because Rule 37(c)(2) fees should have been granted to Ingersoll for Dobos's failure to agree to the admissibility of certain medical records, we remand to the trial court for a determination of appropriate attorney's fees and costs.

## II. *FACTS AND PROCEEDINGS* [1]

### A. *Facts*

On September 23, 1994, Gary Dobos was driving a taxi in Kodiak. During his evening shift, he was summoned by police to the Westmark Hotel to drive Dorman Lodge to another hotel. The Westmark had refused to rent a room to Lodge. When Lodge entered Dobos's taxi, he was unruly, had been drinking, and reeked of fish. Dobos headed for the Shelikof Lodge.

On the way to the Shelikof Lodge, Lodge changed his mind and told Dobos to take him to the Star Motel instead. Because Dobos had already passed the access road leading to the Star Motel, he decided to cut through the parking lot in front of Mack's Sporting Shop. To enter the parking lot, Dobos had to drive over the sidewalk.

Margarita Ingersoll, an eight-year-old, and her family were walking from the Shelikof Lodge to the Krafts Store. Ingersoll was wearing jeans, a plaid shirt, a light purple jacket, and pink shoes with velcro straps. The family had just passed McDonald's Restaurant when Ingersoll paused to strap her shoe. Ingersoll then hurried to catch up with her family, moving at either a sprint or a fast walk. Ingersoll and her family walked along the sidewalk next to the parking lot in front of Mack's Sporting Shop. According to Victor Larionoff, who was walking with Ingersoll's family, the area was well-lit from the McDonald's, the Mack's Sports Shop, and the gas station across the street. Police

---

**1.** The facts and proceedings affiliated with the   Rule 37(c)(2) issue are set forth in Part IV.C.

Officer John Palmer, who investigated the accident, testified that there was also a streetlight in the parking lot.

Dobos saw Ingersoll's family to his left, but did not see Ingersoll, who was to the right of the vehicle because she had lagged behind the group. As he drove into the parking lot, Dobos was angling to the left and did not look to his right. Dobos's car hit Ingersoll in the leg, knocking her to the ground. At the time of impact, Dobos estimated that he was traveling no more than five miles per hour. Dobos knew that there were no bumps in the parking lot, so he realized that he was on top of something and stopped the car. Rosemarie Berdi, Ingersoll's half-sister, attempted to pull Ingersoll out from under the tire, but was unable to do so. Ingersoll was trapped under the front tire of the car for over a minute, until Dobos backed the car off of her, under Larionoff's instruction. Dobos then radioed for an ambulance and waited in his vehicle until the police arrived.

The ambulance arrived "shortly," followed "shortly" by the police. Sergeant Michael Andre conducted tape-recorded interviews of the witnesses on the scene, including Lodge. Sgt. Andre observed that Ingersoll was wearing "dark clothing" and that Lodge was "somewhat intoxicated." Ingersoll was taken to the hospital and released to her mother's care that night.

### B. *Proceedings*

Rick and Eva Ingersoll, Margarita's parents, brought suit on behalf of themselves and their daughter. Their claims included strict liability, reckless behavior, negligence, assault and battery, infliction of emotional distress, and loss of consortium. Rosemarie Berdi joined the suit as a plaintiff as well, claiming loss of consortium and infliction of emotional distress. The suit named as defendants Dobos and his employers Julma

Swartout, A & B Taxi Dispatch Company, Fred Coyle, and Irene Coyle. Berdi, Rick, and Eva were dismissed as plaintiffs by stipulation, leaving only Margarita. On summary judgment, defendants Fred and Irene Coyle and A & B Taxi Dispatch Company were dismissed from the suit.

After Ingersoll presented her case to the jury, Dobos moved for a directed verdict. The court denied the motion. Following a three-day trial, the jury found Dobos liable for negligence, finding that Dobos was one hundred percent responsible for the accident, and awarded Ingersoll $42,382.80 in damages, including past and future economic and non-economic losses. Judge Donald Hopwood accepted the decision of the jury and entered a judgment in favor of Ingersoll for the amount awarded by the jury plus interest, Civil Rule 79 costs, and Civil Rule 82 attorney's fees. Judge Hopwood declined to award Civil Rule 37 attorney's fees or costs. This appeal and cross-appeal followed.

### III. *STANDARDS OF REVIEW*

We review the trial court's decision to admit evidence under a hearsay exception for abuse of discretion.[2] Decisions about the admissibility of evidence are committed to the sound discretion of the trial court.[3] We reverse only if upon review of the record as a whole, we are left with a definite and firm conviction that the trial court erred in its ruling and the error affected the substantial rights of a party.[4]

In reviewing the trial court's denial of a motion for a directed verdict, we do not weigh conflicting evidence or judge the credibility of witnesses.[5] Instead, we "determine whether the evidence, when viewed in the light most favorable to the non-moving party, is such that reasonable persons could not differ in their judgment as to the facts."[6]

The standard of review for reviewing the denial of Rule 37(c)(2) sanctions will be dis-

---

**2.** *See Wyatt v. State,* 981 P.2d 109, 112 (Alaska 1999).

**3.** *See Hawley v. State,* 614 P.2d 1349, 1361 (Alaska 1980).

**4.** *See Wyatt,* 981 P.2d at 112; Alaska R.Civ.P. 61.

**5.** *See Mullen v. Christiansen,* 642 P.2d 1345, 1348 (Alaska 1982).

**6.** *Id.;* see also Alyeska Pipeline Serv. Co. v. Aurora Air Serv., Inc., 604 P.2d 1090, 1094 (Alaska 1979).

cussed in the sanctions section of this opinion.

## IV. *DISCUSSION*

### A. *Any Error the Trial Court May Have Made in Admitting Lodge's Statement Is Harmless.*

At the scene of the accident, Sgt. Andre conducted interviews of the witnesses, including Lodge. Sgt. Andre spoke to Lodge for approximately two or three minutes. Lodge was not called as a witness at the trial, apparently because of unavailability. Instead, Sgt. Andre testified about what he heard Lodge say. According to Sgt. Andre, Lodge told him that, as the cabdriver began turning into the driveway of Mack's Sport Shop next to McDonald's Restaurant, Lodge saw a child and said "hey, man, watch it," and Dobos hit Ingersoll two or three seconds later. Lodge opined to Andre that Dobos "just wasn't paying attention" and that he had hit the child "almost dead center." Dobos challenged as inadmissible hearsay Sgt. Andre's testimony recounting his interview with Lodge. The testimony was admitted over Dobos's objection under the present sense impression exception.

According to Alaska Rule of Evidence 801(c), hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." The parties do not dispute that Lodge's statement is hearsay. They only dispute whether the evidence is nonetheless admissible under a hearsay exception.

■ Rule 803(1) sets out the present sense impression exception to the hearsay rule: a "statement describing or explaining an event or condition made while the declarant was perceiving the event or condition or immediately thereafter" is not excluded by the hearsay rule. Thus, to fall within the present sense impression exception, a statement must meet three requirements: it must describe or explain the event or condition; it must be made during or immediately after the event; and it must be based on the perception of the declarant. The burden is on the proponent of the evidence to establish the foundational facts necessary for the hearsay exception .[7]

■ Lodge's statement plainly is descriptive and was based on his personal perception of the events surrounding the accident. Therefore the only serious question as to whether the present sense impression exception applies is whether the statement was sufficiently contemporaneous to meet the "immediately thereafter" standard of the rule. Because of the substantial uncertainty in the record concerning when the statement was taken by Sgt. Andre, it is unclear whether the contemporaneity foundation for admission of the statement was established. But we need not resolve this question, because we hold that even if admission of the statement was erroneous, it was harmless error.

■ Under the harmless error test "[t]he members of this court must necessarily put themselves, as nearly as possible, in the position of the jury in order to determine whether, as reasonable [people], the error committed probably affected their verdict."[8] The burden is on Dobos to show prejudice.[9]

Absent Lodge's statement, the evidence of Dobos's negligence consists of Ingersoll's testimony that she was walking quickly on the sidewalk when she was hit, Dobos's testimony that he was focused on angling to the left rather than looking to the right, the testimony that the area was well-lit, and Larionoff's testimony that Dobos did not back his car off of Ingersoll for over a minute. Based on this testimony, it seems likely that the jury would have found Dobos negligent, both for his failure to look both ways before driving over the sidewalk and for his decision not to back the car off of Ingersoll sooner.

■ Significant factors in determining whether an error was harmless or prejudicial may include how central the testimony was

---

7. *See Bentley v. State,* 706 P.2d 1193, 1197–98 n. 2 (Alaska App.1985) (citing *Ohio v. Roberts,* 448 U.S. 56, 74–75, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980)).

8. *Alyeska Pipeline Serv. Co. v. O'Kelley,* 645 P.2d 767, 773 (Alaska 1982) (citation omitted).

9. *See Zerbinos v. Lewis,* 394 P.2d 886, 889 (Alaska 1964).

relative to the overall length of the trial and how the testimony was used at closing argument.[10] In this case, Sgt. Andre's repetition of Lodge's statement took up a short period of time over the three-day trial. Sgt. Andre does not appear to have been on the stand for more than fifteen or twenty minutes. The issue was also discussed with Dobos in testimony that lasted less than five minutes. Lodge's statement was alluded to in closing argument, when Ingersoll's counsel said "[w]e heard about the passenger Dorman Lodge. He's able to see something." In light of the length of the closing argument, this reference to Lodge was exceedingly brief.[11] It is also quite vague. The Lodge testimony was a small segment of the plaintiff's case. Additionally, the fact that Lodge was intoxicated suggests that the jury would have accorded little weight to his testimony, making it even less likely that his statement affected the verdict.

Because Lodge's statement played a very small role in the trial, and the other evidence was strong enough that the jury would probably have found Dobos to be negligent, we find that any error the trial court may have made in admitting this evidence is harmless.

**B.** *The Trial Court Did Not Err in Denying Dobos's Motion for a Directed Verdict.*

Dobos argues that, assuming that the trial court should have excluded Lodge's statement, there was no evidence supporting Ingersoll's claim that Dobos was negligent.[12] But our outline of the evidence in the preceding discussion clearly shows this argument to be without merit.

**C.** *Civil Rule 37(c)(2) Attorney's Fees and Costs*

1. *Facts and proceedings*

During the course of litigation, Ingersoll sent Dobos requests for admission for a number of documents and exhibits. Dobos conceded the admissibility of the majority of these documents and exhibits, declined to admit others, and indicated that some would be admissible if further proofs of foundation were made. Specifically, Dobos denied that Ingersoll's medical records from Kodiak Island Hospital and North Pacific Medical Center were non-hearsay or admissible. Consequently, Ingersoll called doctors to testify in order to lay a foundation for the medical records identified above; the records were admitted without objection.

Ingersoll also sent requests for admission asking that Dobos concede that he was at least partially negligent and had caused pain and injury to Ingersoll. Dobos denied that he was at all negligent. At the end of the trial, the jury concluded that Dobos was negligent and one hundred percent responsible for Ingersoll's damages and injury.

Ingersoll requested costs and attorney's fees under Civil Rule 37(c)(2), which provides as follows:

> If a party fails to admit the genuineness of any document or the truth of any matter as requested under Rule 36,[13] and if the party requesting the admissions thereafter proves the genuineness of the document or the truth of the matter, the requesting party may apply to the court for an order requiring the other party to pay the reasonable expenses incurred in making that proof, including reasonable attorney's fees. The court shall make the order unless it finds that (A) the request was held objec-

---

**10.** *See Alyeska Pipeline Serv. Co.*, 645 P.2d at 773 (admission of irrelevant evidence was harmless error because it took a short time in a multiple-day trial and was not mentioned at closing argument).

**11.** A few examples of issues that took up considerably more time than the Lodge statement in this closing argument include the attorney's discussion of Hollywood's depiction of gavels and black female judges, a rock being thrown into a pond, the value of a mechanical crane, the trau-

ma of a girl being forced to dress as a boy in a play, and the battle of Trafalgar.

**12.** Because we have already concluded that the admission was not prejudicial error, the motion for directed verdict was properly denied.

**13.** Civil Rule 36(a) allows a party to serve a written request for the admission of the truth of any matters relating to fact or the application of law to fact, including the genuineness of documents.

tionable pursuant to Rule 36(a), or (B) the admission sought was of no substantial importance, or (C) the party failing to admit had reasonable ground to believe that the party might prevail on the matter, or (D) there was other good reason for the failure to admit.

The trial court denied this request. Ingersoll cross-appeals this denial of Rule 37(c)(2) fees and costs.

### 2. *Standard of review*

■■ Those exceptions to Rule 37(c)(2) that raise legal questions we review de novo.[14] Those exceptions that rely on factual findings we review for clear error.[15] The fourth exception, whether there was other good reason for the failure to admit, requires an exercise of judgment. We review this exception for abuse of discretion.[16] Once the trial court has determined that the failure to admit was not subject to any exception, Rule 37(c)(2) sanctions are mandatory; the trial court lacks the discretion not to award them.[17] The amount of the attorney's fees awarded is a discretionary decision, reviewed under the abuse of discretion standard.

### 3. *The "reasonable grounds" exception excuses Dobos's failure to admit negligence or causation.*

■■ The "reasonable grounds" exception [18] applies to Dobos's failure to admit his negligence and causation. The issue is whether Dobos acted reasonably in believing that he might prevail.[19] This is an objective test; courts look at the record to see if there was a basis for concluding that he would prevail.[20] That the evidence was ultimately admitted or the factual admission ultimately proven does not mean that it was unreasonable not to concede it.[21]

#### a. *Negligence*

■ Ingersoll argues that if Dobos had admitted his negligence when she sent him the request for admission, she would not have had to go to trial at all. She therefore argues that she is entitled to the cost of the entire trial. However, even though the evidence against Dobos was strong, it was not so compelling that he had a duty to admit that he was negligent. Whether Dobos was negligent was a question of fact properly determined by the jury.[22]

At the time that Dobos answered the request for admission of his negligence, he could reasonably have believed that he would prevail on the negligence issue.[23] From his perspective, he was driving slowly and carefully. Furthermore, Ingersoll had testified at her deposition that she was running when the car hit her; it was not until the trial that she testified that she had been walking. Because there was a factual dispute as to whether Dobos was negligent, he was not required to admit his negligence when the admission was requested. Therefore, the trial court did not err in denying Rule 37 fees

---

14. *See Strong Enters., Inc. v. Seaward*, 980 P.2d 456, 458 (Alaska 1999) (legal questions associated with attorney's fees are reviewed de novo).

15. *See Cockerham v. State*, 933 P.2d 537, 539 n. 9 (Alaska 1997) (trial court's factual decisions reversed only if clearly erroneous).

16. *See Pierce v. Pierce*, 949 P.2d 498, 500 (Alaska 1997) (applying abuse of discretion standard to trial judge's discretionary decision about relief from judgment).

17. *See Marchand v. Mercy Med. Ctr.*, 22 F.3d 933, 937 (9th Cir .1994); *Booker v. Stauffer Seeds, Inc. (In re Stauffer Seeds, Inc.)*, 817 F.2d 47, 49 (8th Cir.1987); *Scheufler v. General Host Corp.*, 915 F.Supp. 236, 238 (D.Kan.1995).

18. Alaska R.Civ.P. 37(c)(2)(C).

19. *See Washington State Dep't of Transp. v. Washington Natural Gas Co.*, 59 F.3d 793, 805–06 (9th Cir.1995).

20. *See* 7 James Wm. Moore et al., *Moore's Federal Practice* § 37.74[4] (3d ed.1997).

21. *See Comeaux v. Brown & Williamson Tobacco Co.*, 915 F.2d 1264, 1275 (9th Cir.1990); *Scheufler*, 915 F.Supp. at 239.

22. *See Schumacher v. City and Borough of Yakutat*, 946 P.2d 1255, 1256 n. 1 (Alaska 1997) (quoting *Gordon v. Alaska Pac. Bancorporation*, 753 P.2d 721, 725 (Alaska 1988)).

23. *See, e.g., Board of Dirs., Water's Edge v. The Anden Group*, 136 F.R.D. 100, 105–06 (E.D.Va. 1991) (court looks at information available at the time of request for admission to determine reasonableness).

based on Dobos's failure to admit his negligence.

### b. *Causation*

██ Dobos's refusal to admit to causation was also reasonable. Request for Admission No. 5 asked Dobos to admit that his negligence caused Ingersoll's injuries. Since he reasonably denied negligence when its admission was specifically requested, it was also reasonable to deny negligence when its admission was requested in combination with causation. Requests for Admission Nos. 6–9 are connected to Request for Admission No. 5, so conceding any of these would also concede negligence. In addition, Dobos may have reasonably believed that Ingersoll's future earnings potential was not decreased and that she would not need further surgery. The trial court did not abuse its discretion in concluding that the "reasonable grounds" exception applied to the causation issues.

### 4. *Dobos's failure to concede the admissibility of certain medical records entitles Ingersoll to Civil Rule 37(c) fees.*

Under Civil Rule 36, a party can request that the opposing party admit the genuineness of any documents.[24] "Rule 37(c) provides a sanction for the enforcement of Rule 36 dealing with requests for admission."[25] Thus, the failure to admit the genuineness of documents subjects a party to Rule 37(c) attorney's fees and costs unless an exception applies.[26]

Dobos argues that it was reasonable not to acknowledge that the medical records were admissible because they were hearsay. Because the proponent of hearsay bears the burden of proving that the hearsay falls within an exception, Dobos argues that he did not have to admit that the records were admissible and not hearsay until Ingersoll laid a foundation. However, medical records, including doctors' chart notes, opinions, and diagnoses, fall squarely within the business records exception to the hearsay rule. That exception provides:

> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, *opinions, or diagnosis,* made at or near the time by, or from information transmitted by, a person with knowledge acquired of a regularly conducted business activity, and if it was the regular practice of that business activity to make and keep the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.[27]

Moreover, to the extent that the rule's text leaves any doubt about the admissibility of the hospital records, the commentary to this provision definitively resolves the question. Noting that entries in the form of opinions are "commonly encountered with respect to medical diagnoses, prognoses, and test results," the commentary states that in order to make clear its adherence to the trend of admissibility of such items, "the rule specifically includes both diagnoses and opinions, in addition to acts, events, and conditions, as proper subjects of admissible entries."[28]

---

24. *See Berry v. Federated Mut. Ins. Co.,* 110 F.R.D. 441, 443 (N.D.Ind.1986) (noting that Rule 36 is used to determine which documents will have foundational problems). *Cf. Bernstein v. IDT Corp.,* 638 F.Supp. 916, 920 (S.D.N.Y.1986) (allowing plaintiff to file a Rule 36 request for admission to establish genuineness of documents); *Friedman v. Prudential Life Ins. Co. of Am.,* 589 F.Supp. 1017, 1021 (S.D.N.Y.1984) (implying that Rule 36 applies to medical records and that Rule 37(c) sanctions would follow for failure to admit the genuineness of medical records).

25. Fed.R.Civ.P. 37 advisory committee's note (1970 amend.).

26. *See Johnson Int'l Co. v. Jackson Nat'l Life Ins. Co.,* 812 F.Supp. 966, 985–90 (D.Neb.1993) (addressing whether failure to admit foundation of medical and prescription records violated Rule 36, mandating an award under Rule 37(c)).

27. Alaska R.Evid. 803(6) (emphasis added).

28. Alaska R.Evid. 803(6) cmt.

The purpose of Civil Rule 36 is to expedite and streamline discovery and litigation by establishing facts over which there is no real dispute.[29] "Requests for admission as to genuineness of documents can be particularly useful in helping parties determine which documents that are to be introduced at trial will present foundational problems and which will not."[30] Requesting that documents which clearly fall within a hearsay exception be admitted without having to put the record-keeper on the stand would seem to be one of the central purposes for which Rule 36 was designed. Requiring testimony that medical records were made and kept in the regular course of business is a waste of time unless there is some reason to believe that the records are not genuine or trustworthy.

That Ingersoll had the burden of proving that the documents were not hearsay is irrelevant. "A request is not objectionable on the ground that ... the request relates to matters on which the requesting party has the burden of proof."[31] The purpose of the rule is to avoid unnecessary testimony, regardless of where the burden lies.[32]

Dobos conceded at oral argument that he had no reason to believe that the medical records were inauthentic. He explained that the reason he denied the request to admit was so Ingersoll would put the doctors on the stand, as Dobos wished to cross-examine them about some of their medical conclusions. However, if Dobos wished to question Ingersoll's doctors, he could have called them to the stand himself. Denying the admissibility of medical records when there was no reasonable question as to their admissibility violates Rule 36(a).

Because Dobos had no reason to deny the admissibility of the medical records, he should have been subjected to Rule 37(c)(2) sanctions for these denials. The failure to sanction him was error. On remand, the court should award reasonable fees and costs for calling witnesses who testified to the facts needed to admit Ingersoll's medical records.

## V. CONCLUSION

The trial court's decision to admit the hearsay evidence under the present sense impression exception was at worst harmless error. The motion for a directed verdict was appropriately denied, since there was a triable issue of fact on Dobos's negligence. We therefore AFFIRM the trial court in these respects.

The denial of attorney's fees based on the failure to admit negligence and causation was not an abuse of discretion. Dobos could reasonably believe that he was not negligent; this is sufficient to avoid Rule 37(c)(2) fees. We AFFIRM this aspect of the denial of attorney's fees under Rule 37. However, it was error not to award attorney's fees and costs for Dobos's refusal to admit the genuineness of the medical records. We therefore REMAND for a determination of attorney's fees and costs relating to this item.

---

29. *See* Moore, *supra* note 20, § 36.02[1].

30. *Id.* § 36.10[9].

31. 8A Charles Alan Wright et al., *Federal Practice and Procedure: Civil* § 2254, at 528–29 (1994).

32. *See* Moore, *supra* note 20, § 37.70 ("Admissions not only eliminate unnecessary proofs at trial, but also streamline discovery and motion practice....").