NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite a memorandum decision in a brief or at oral argument should review Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| REBECCA L., | ) | |
| | ) | Supreme Court No. S-14509 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-07-06859 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| | ) | AND JUDGMENT* |
| MARTIN C., | ) | |
| | ) | No. 1452 - March 13, 2013 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Frank A. Pfiffner, Judge.

Appearances: Justin Eschbacher, Law Offices of G. R. Eschbacher, Anchorage, for Appellant. Roberta C. Erwin and Robert C. Erwin, Palmier ~ Erwin, LLC, Anchorage, for Appellee.

Before: Fabe, Chief Justice, Carpeneti, Winfree, and Stowers, Justices.

## I.    INTRODUCTION

This appeal involves a custody dispute. An unmarried couple who briefly lived together had a son. The father worked on the North Slope on a two-week-on/two-week-off rotating schedule. For the first five years of the boy's life, he lived primarily with his mother under the parties' agreement; the father had frequent and regular

---

\*    Entered under Alaska Appellate Rule 214.

visitation. Once the boy turned five, the parties began renegotiating the custody arrangement. The father sought a two week rotating custody arrangement that coincided with his work schedule. The mother asserted that the child was not yet mature enough to follow such a schedule. The parties could not reach an agreement so the father filed a motion to modify custody and child support.

While the motion to modify was pending, the superior court scheduled a custody hearing on eight days' notice. The superior court subsequently denied the mother's motion for a continuance and the hearing proceeded as scheduled. Following the hearing, the superior court expanded the father's custody as requested and adjusted child support payments to reflect the new arrangement.

The mother appeals, arguing that the superior court made several errors including: denying her motion for a continuance, denying her request to have the child evaluated by a professional, failing to properly consider the stability factor, modifying the vacation and holiday schedule concerning spring break, allowing hearsay evidence, and miscalculating the child support adjustment. With the exception of the superior court's modification of the vacation and holiday schedule, we affirm its decision in all respects. As to that single issue, we remand for the superior court to clarify its order.

## II. FACTS AND PROCEEDINGS

### A. Facts

Rebecca L. and Martin C. have one child, Gavin,[1] born in May 2005. Martin works on the North Slope following a two-week-on/two-week-off schedule. After Gavin's birth Rebecca and Martin resided together briefly, but later separated. In 2007, following a period in which the parents established a voluntary visitation schedule, Rebecca filed a complaint seeking primary physical custody. She stated that she was

---

[1]      We use pseudonyms to protect the privacy of the family members.

concerned about Gavin's anxiety when he was moving between his father's and her household because he was biting his nails and "acting out." An interim custody order was issued in December 2007 which provided primary custody to Rebecca but allowed Martin overnight visits and frequent day visits during the two weeks he was available each month.

In the meantime, the parties continued to negotiate custody. A custody investigator was appointed and Rebecca obtained an expert to prepare a hypothetical report on the effects of removing a toddler from the custody of his primary caregiver. The expert's report suggested that Gavin's best interests would be served if, at least while he was very young, he remained in the primary care of one parent. The parties came to a settlement agreement before trial which gave Rebecca primary physical custody but provided that when Gavin turned five it would constitute a significant change in circumstances and would trigger a reevaluation of the custody schedule.

After the 2008 custody agreement both parties had several life changes. Rebecca married a person who had two children and in August 2010 she and Gavin moved from the home she shared with her mother to a new home in Eagle River. In September 2010 Martin married and several months later moved into a new home. His wife was expecting their first child at the time of the hearing. In 2010 Gavin started school.

## B.    Proceedings

When Gavin turned five the parties began renegotiating the custody schedule, but they were unable to come to an agreement. On May 20, 2011, noting that Gavin would start school in the fall and that it would be to the boy's benefit to have his schedule resolved by then, Martin filed a motion to modify custody. He requested a two-week-on/two-week-off schedule with a transition on Wednesdays coinciding with his work schedule. Rebecca filed a notice of change of judge on June 2, 2011, at which time

the case was reassigned. She then obtained an extension of time, filing her opposition and cross-motion to modify on June 9, 2011. Martin filed a reply on June 24, 2011. On July 12, 2011, the reassigned judge, Superior Court Judge Frank A. Pfiffner, scheduled a hearing for July 20, 2011. Rebecca filed an expedited motion to continue the hearing. The superior court granted the request to expedite but denied the motion to continue because there was limited availability on both the court's and the lawyers' calendars and the continuation would have delayed a decision until after school had started.

At the hearing both parties expressed their positions regarding the schedule. The parties were the only witnesses, but a report created in 2008 for the prior custody hearing was admitted into evidence.[2] Rebecca was concerned that Gavin was too immature for a shared physical custody schedule. Although she stated that Martin was a good and attentive father, she testified that Gavin seemed anxious and stressed, which she believed was a result of being in Martin's care, starting formal schooling, and other recent changes in his life. She noted that he had started to chew his fingernails, had been waking in the middle of the night, and had regressed in toilet training. Martin stated that he thought Gavin was chewing his fingernails due to a genetic condition that Martin also had, and that Gavin was mature enough for a two-week-on/two-week-off schedule. Martin also thought that Gavin was a well-adjusted child who would be able to express any fears he might have about that new schedule.

Rebecca was also concerned that the distance Martin lived from Gavin's school, which required a 40-minute commute, would make the two-week schedule

---

[2] The report's author had "not met, assessed, nor evaluated" Gavin, but the report addressed the hypothetical stresses of shared custody on toddlers. It contained a recommendation that while Gavin was too young at the time to be in a shared custody situation, once he turned five a two-week-on/two-week-off schedule would likely be appropriate.

difficult for Gavin because he would have to wake up earlier when he was with Martin. Rebecca thought this difficulty would be increased because of the midweek transfer. She preferred to keep the same schedule and reevaluate when Gavin was older.

The couple had trouble communicating. Martin was concerned that Rebecca questioned Gavin about certain activities occurring in his household rather than directly speaking with Martin. Rebecca testified that the communication difficulties could hinder a successful midweek transfer and co-parenting. However, Martin testified that despite the problems, they are able to properly communicate any concerns regarding Gavin.

Judge Pffifner entered oral findings discussing the statutory best interest factors and granting the modification requested by Martin. The court found that both parties were good parents but acted selfishly in regards to the best schedule for Gavin. The court found that shared custody was in Gavin's best interests. Under the custody order Gavin would be with Martin for two weeks and then transition to Rebecca; during the two weeks when Martin had custody, Rebecca would have a weeknight dinner with Gavin. This change was effective on August 1, 2011. In oral findings the court noted that the holiday schedule from the 2008 agreement, which included a provision for spring break, was to remain in effect. However, Martin's attorney pointed out that the spring break schedule might not coincide with Martin's work schedule. The superior court did not resolve the issue at the hearing, but in the final order the parties were to rotate Thanksgiving and Christmas when Martin was in town, and there was no mention of spring break. The superior court also approved a modification of child support effective July 1, 2011.

Rebecca appeals, arguing that the superior court made several errors when it: (1) denied the motion to continue; (2) denied her request for an evaluation of the child prior to modifying custody; (3) failed to properly consider the stability factor in

AS 25.24.150; (4) considered hearsay evidence; (5) adopted a new holiday schedule; and (6) modified child support effective July 1, 2011.

## III. STANDARD OF REVIEW

A superior court exercises broad discretion in making child custody determinations.[3] Procedural decisions — such as scheduling hearings or admitting evidence — are reviewed for abuse of discretion.[4] An abuse of discretion occurs "if, upon review of the record as a whole, we are left with 'a definite and firm conviction that the trial court erred in its ruling and the error affected the substantial rights of a party.' "[5] We review whether a party has been afforded due process using our independent judgment.[6]

## IV. DISCUSSION

### A. The Scheduling Of The Custody Hearing Did Not Violate Due Process And Was Not An Abuse Of Discretion.

Rebecca argues that the scheduling of the custody hearing deprived her of due process and was an abuse of discretion because eight days' notice coupled with her attorney's time constraints hindered her ability to prepare her case. She argues that there was no reason the decision to modify custody could not have been made after school started and that if there had been more time she would have presented additional

---

[3]    *Cusack v. Cusack*, 202 P.3d 1156, 1158-59 (Alaska 2009).

[4]    *Bylers Alaska Wilderness Adventures, Inc. v. City of Kodiak*, 197 P.3d 199, 205 (Alaska 2008) ("We leave questions of admissibility to the sound discretion of the trial court. . . ."); *Balough v. Fairbanks N. Star Borough*, 995 P.2d 245, 254 (Alaska 2000) ("We review procedural decisions of the superior court for abuse of discretion.").

[5]    *Bylers Alaska Wilderness Adventures, Inc.*, 197 P.3d at 205 (citing *Dobos v. Ingersoll*, 9 P.3d 1020, 1023 (Alaska 2000)).

[6]    *West v. State, Bd. of Game*, 248 P.3d 689, 694 (Alaska 2010).

evidence, including a professional evaluation of Gavin and other witnesses to support her position. Martin replies that he was also pressed for time in preparation but that the parties had been negotiating this dispute for over a year when the hearing was finally scheduled. He points out that he bore the burden of proof in the hearing and had even less time to prepare due to his work schedule. And, most importantly, he notes that the motion "was filed to obtain a decision prior to the start of the new school year on August 16, 2011." The superior court denied the motion to continue because July 20 was the only available date on the court's and counsels' crowded calendars before Gavin started school and the court wanted to avoid any possible transition in the middle of the school year. While we agree that eight days' notice coupled with Rebecca's attorney's time constraints made preparation for the hearing difficult, we do not find it to be a violation of due process or an abuse of discretion.

Rebecca of course was entitled to due process in this case.[7] In a custody hearing, "[i]t is essential . . . that the parties be afforded a hearing which grants them the opportunity to present the quantum of evidence needed to make an informed and principled determination."[8] We have previously addressed due process concerns where a custody hearing was held with short notice to the parties. In *Cushing v. Painter*[9] we found that the trial court violated a parent's right to due process by entering a permanent child custody order when notice of the scheduled hearing stated it would concern only

---

[7] Alaska Const. art. 1 § 7; *Siekawitch v. Siekawitch*, 956 P.2d 447, 449 (Alaska 1998).

[8] *Cushing v. Painter*, 666 P.2d 1044, 1046 (Alaska 1983).

[9] 666 P.2d 1044 (Alaska 1983).

interim custody and the parties had only five days to prepare.[10] The custody modification hearing in *Cushing* was initially characterized as an interim hearing, limited to the question of where the child would reside for the upcoming school year.[11] This was an important basis of our determination that due process had been violated, since the mother was unaware of the hearing's permanent consequences when preparing.[12] And we noted that the record reflected "minimal preparation."[13]

But this case is distinguishable from *Cushing*. First, the parties had agreed years earlier that the custody arrangement could be revisited when Gavin turned five. Second, they had been negotiating a custody modification for over a year by the time of the hearing. Third, Rebecca, unlike the mother in *Cushing*, had notice that the custody hearing was permanent. Fourth, Martin moved to modify custody in May specifically so that a decision could be rendered before school began in August. Fifth, Rebecca was able to present sufficient evidence allowing the superior court to make a determination and the record does not reflect minimal preparation. Both parties fully briefed and presented their positions coherently and comprehensively before the court. Although Rebecca claims she would have presented additional witnesses, these witnesses would have been cumulative to testimony she presented regarding Gavin's maturity level. She does not indicate how these additional witnesses would present substantially new evidence that might change the trajectory of the court's analysis. She advocated her position clearly throughout her testimony, presenting her account of Gavin's stress levels and behaviors. The superior court noted her concerns but found that Gavin was well

---

[10]      *Id.* at 1046.

[11]      *Id.* at 1045.

[12]      *Id.* at 1046 (noting that the mother chose not to present rebuttal testimony).

[13]      *Id.*

adjusted and that his best interests would be served by the two week rotating schedule. In doing so the court considered sufficient evidence and made an informed decision on the merits of the case. There was no violation of Rebecca's due process rights.

Nor was the decision to deny the continuance an abuse of discretion. The decision "to deny a continuance will be reviewed in light of the particular facts and circumstances of each individual case to determine whether the denial was so unreasonable or so prejudicial as to amount to an abuse of discretion."[14] The hearing was not unexpected, as the motion to modify custody had been filed in May, and it was not a complicated custody dispute. Neither party disputed the other's parenting; the focus was on Gavin's maturity level, a topic on which his parents were capable of competently testifying. Both parties were equally pressed for time, Martin possibly more so since he was unable to return from the North Slope until the day before the hearing. Additionally, the parties had been engaged in protracted custody negotiations where both parties had sufficient time to stake out and develop their positions. Given that the party who bore the burden of proof, Martin,[15] was able to prepare the case in time, and given the parties' extensive pre-filing preparation, the fairly straightforward legal issues, and the superior court's legitimate concern for concluding the process before Gavin began school, we find no abuse of discretion. We affirm the superior court's decision to deny the continuance.

**B.**   **The Superior Court Did Not Abuse Its Discretion When It Denied Rebecca's Request For An Expert Evaluation.**

---

[14]   *Alaska Marine Pilots v. Hendsch*, 950 P.2d 98, 104 (Alaska 1997) (quoting *Johnson v. Schaub*, 867 P.2d 812, 815 (Alaska 1994)).

[15]   *Lashbrook v. Lashbrook*, 957 P.2d 326, 329 (Alaska 1998) (quoting *Lee v. Cox*, 790 P.2d 1359, 1361 (Alaska 1990) ("The burden of proof remains on the parent making the motion to demonstrate that the changed circumstances, considered in conjunction with other relevant facts bearing upon the child's best interests, warrant modification of the existing custody decree.") (internal quotation marks omitted)).

Rebecca contends that the superior court improperly denied her request to have an expert evaluate Gavin prior to implementing a significant change in his schedule. Martin argues that the decision was not an abuse of discretion; he points out that Rebecca presented no evidence that Gavin needed an evaluation until after the superior court made its decision and her request appeared to be an attempt to delay imposition of the new schedule.

We conclude that the superior court did not abuse its discretion when it denied the request. It is important to remember that the request came after the superior court had issued its custody decision. The request appears to be an ill-timed attempt to delay the superior court's custody determination because Rebecca waited until after the superior court made its decision to request an evaluation. In addition, Rebecca's request contradicts her own testimony that seeing a family therapist would be too stressful for Gavin. Because denial of her request in these circumstances was not an abuse of discretion, we affirm the superior court.

## C. The Superior Court Did Not Err In Its Consideration Of The Stability Factor.

Rebecca argues that the superior court failed to consider the stability factor,[16] instead focusing on a legislative preference for shared physical custody. She also argues that it failed to consider the disruptiveness of the proposed schedule to Gavin's well-being. Martin replies that the superior court properly considered this factor and that Rebecca's position essentially advocated the "tender years" doctrine.[17] The

---

[16]    AS 25.24.150(c)(5) directs the superior court to consider "the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity."

[17]    The tender years doctrine is a legal presumption that young children should be placed with the mother if the other factors are evenly balanced. *Wetzler v. Wetzler*,

(continued...)

superior court found that although Gavin had been living successfully with Rebecca, it was desirable for him to be in a shared custody arrangement.

Rebecca's argument is not persuasive. In a custody determination the focus is on the best interests of the child.[18] It "requires the court to view continuity and stability both prospectively and retrospectively: the court must examine both the time that a child 'has lived' in a stable environment and 'the desirability of maintaining [that] continuity.' "[19] The superior court properly considered the factor. It found that the 2008 custody order required a reevaluation of the schedule when Gavin turned five years old, as this constituted a significant change in circumstances for custody modification purposes. The court then determined that it was no longer desirable for Rebecca to have primary custody of Gavin because both parties were "equally able to parent." This decision was not an abuse of discretion. Gavin's stability would not be entirely disrupted with the new custody arrangement. For instance, he would continue to attend the same school and he was already adjusted to his father's care on shorter visits.[20] Finally, there was no concern that either parent would be unable to provide stability once the transition to the new schedule was complete; both parents were good and supportive parents.[21]

---

[17]     (...continued)
570 P.2d 741, 742 (Alaska 1977). It does not apply in Alaska because the pertinent inquiry is the child's best interests. *Id.* at 743.

[18]     AS 25.24.150(c).

[19]     *Meier v. Cloud*, 34 P.3d 1274, 1279 (Alaska 2001) (alteration in original).

[20]     *See Tompkins v. Tompkins*, 961 P.2d 419, 424-25 (Alaska 1998) (agreeing with superior court's findings that familiar activities such as attending the same school and participating in established activities promote stability in children's lives).

[21]     *See Melendrez v. Melendrez*, 143 P.3d 957, 963 (Alaska 2006) (quoting
(continued...)

Faced with two good parents, the superior court carefully considered all aspects of Gavin's well-being to ascertain his best interests, including the importance of stability. We conclude that the superior court did not abuse its discretion in considering the stability factor.

**D.** **We Decline To Consider Whether The Expert Report Was Improperly Admitted Because Any Error Was Harmless.**

In preparation for the 2008 custody dispute Rebecca obtained a private expert report that detailed the needs of a toddler, specifically in relation to the necessity of having a stable primary caregiver. The report concluded that toddlers have a unique need to be in a stable environment with their primary caregiver, in this case Rebecca, but that once the toddler reached the age of five he could spend "the entire two week period his father is in town in visitation with his father." Rebecca filed the report in the couple's 2008 custody dispute but Martin offered it as evidence here. Over Rebecca's hearsay objection the superior court admitted the report.

Rebecca argues that the report was hearsay and that its admission affected her rights because it was relied on by the superior court and by Martin throughout his briefing. Martin asserts that there was no error because the admission of the report did not affect a substantial right of a party, the report was an admission by a party opponent, and Rebecca waived any objection to the report by filing it with the court in the 2008 dispute.

We decline to consider whether the report was inadmissible hearsay because any error was harmless. Even if the report were erroneously admitted — which we do not decide — its admission is not grounds for reversal. To warrant reversal, an

---

[21]     (...continued)
*McQuade v. McQuade*, 901 P.2d 421, 426 (Alaska 1995) (noting that stability "is often a function of parental attitude")).

error must also "affect[] the substantial rights of the party."[22]  In this case, the report merely concludes that, hypothetically, once Gavin turns five he should be in a two week visitation schedule with his father.  The report makes no assertion that such a schedule would be in his best interests when he actually turned five.  At best this indicates that Gavin's age could trigger a change in custody, especially since both parties are loving and supportive parents, but neither proposition is disputed by the parties.[23]  At the hearing both parties testified about Gavin's ability to follow the schedule.  In this context the report added little that the parties could not meet with contrary evidence or otherwise support. Because any error was harmless, we decline to reverse the decision of the superior court on this basis.

E.    **The Superior Court Approved, Without Explanation, A Proposed Holiday/Vacation Order That Conflicts With Its Oral Decision And That Is Different From The Earlier Order.**

Rebecca next argues that the superior court improperly made a significant change to the holiday and vacation schedule by deleting any provision for spring break, even though there had been no change in circumstances warranting the adjustment and the parties had intended that the 2008 holiday schedule remain in effect even if the regular custody schedule were adjusted.  Martin makes no response to this argument. In its oral findings following the hearing, the superior court first stated that the holiday and vacation schedule would remain the same as in the 2008 custody agreement.  At that point Martin's attorney noted that the school's spring break schedule might not coincide with Martin's work schedule.  The superior court declined to address the issue at the

---

[22]    *Dobos v. Ingersoll*, 9 P.3d 1020, 1023 (Alaska 2000).

[23]    The notion that Gavin's visitation schedule would change once he reached the age of five was reflected in the 2008 settlement agreement and neither party had any serious concerns about the other's parenting.

hearing because it had not been litigated; rather, the parties were directed to first attempt to resolve the issue on their own. But in its final order, which had been proposed by Martin, the superior court dropped all mention of how spring break should be handled. Rebecca sought reconsideration of this issue, but the superior court denied reconsideration.

Although the superior court may have decided to delete from its order the provision specifying how spring break should be handled, we are unable on this record to determine, if such a decision were made, whether it was an abuse of discretion. After stating that it would continue the provision evenly dividing spring break, the court signed an order that makes no mention of spring break. We must remand this issue to the superior court to clarify its order after giving the parties an opportunity to be heard. We do not retain jurisdiction.

### F. The Superior Court Did Not Abuse Its Discretion When It Modified Child Support Effective July 1, 2011.

Rebecca argues that the child support modification effective date was improper because the custody arrangement did not change until August. The superior court adjusted the child support obligation effective July 1, 2011. It gave no reason for selecting that date.

We reverse child support awards if the superior court abused its discretion.[24] There was no abuse of discretion in this case. Although the two week rotating schedule was to start after Martin returned from a nine-day trip, beginning July 22, Martin was taking Gavin with him on that trip. Additionally, Martin testified and Rebecca does not dispute that Gavin had already been in Martin's care for at least one

---

[24]    *Koller v. Reft*, 71 P.3d 800, 804 (Alaska 2003).

week in July.  Because Gavin spent at least half the month in Martin's care, the July 1 effective date is appropriate and we affirm the superior court.

## V.    CONCLUSION

We REMAND the issue of the division of Gavin's spring breaks for further proceedings consistent with this opinion.  We AFFIRM the decision of the superior court in all other respects.